Judge Ewing

delivered the Opinion of the Court.
Burkenmeyer, being anxious to carry on the paper making business, purchased of Brown, a small piece of ground, represented as containing seventeen and one half acres, for the purpose; upon which there was two paper mills erected, and by the representations and showing of Brown, a small stream of water, and dam erected to collect the water, to propel the machinery. A deed was executed, and Burkenmeyer employed hands and went to work repairing the dam and mills, in the presence of, and in part under the advice and direction of Brown; and laid out large sums of money, in making preparations to commence the business. After he had progressed for some time, uninterruptedly, in the repairs, a dispute arose between Brown and two of the hands employed by Burkenmeyer, to whom Brown had hired horses to ride to Louisville. Brown instituted warrants against them for an injury done to his horses, and for an increased compensation, for the time they had detained them, beyond the time agreed on and having failed in his warrants, became incensed, and threatened that he would make Burkenmeyer pay or lose two dollars for each one that he had lost. After which, he set up claim to the water privilege above the mills, including the dam, under a lease which he held for the same, for one dollar per annum, from one William Pettit—as it turned out that the deed which he had made, did not embrace the stream above, or dam, and he was going on to obstruct the repairs on the dam, and the passes to and from it, when the matters in dispute, by writing, were submitted to arbitration ; and an award made on a full hearing of the parties, that Brown should yield up the lease, and cease to oppose obstructions to its free use.
A sale of land, carries with it, all the privileges and incidents essential to its natural uses; as the right of ingress and egress thro’ the land of the vendor, when there is no other inlet.
In the sale of a small tract of land, valuable on land for the two paper mills that were upon it, the vendor, in showing the boundaries, fraudulently pointed out lines which were not the true boundaries of the tract sold, but included the stream & dam above the mills, and a trough leading the water from the dam to the mills: when, in fact, these things were all upon an adjoining tract, held by the vendor under along lease, and were not embraced by the boundaries described in the deed Tho’ the statute of frauds may be an obstacle in the way of compelling the vendor to convey the land shown and verbally sold, but not embraced in the deed—there is nothing to prevent the chancellor from restraining the vendor, by perpetual injunction, from destroying or injuring the stream, dam or troughs, so as to destroy or impair the use which the purchaser makes of them. And the chancellor may, in the same way, prevent the vendor from obstructing a private way thro’ his land, by which alone the mills are accessible.
*160 Brown resisted the award, and continued to oppose obstructions to the use of the dam, and water privilege above, when Burkemneyer filed his bill, to enforce, specifically, his contract, and the award thereon, and injoin Brown from obstructing him in the free use of the water privilege and dam, and of a passway leading to his mills, over the ground adjoining, which Brown had used and which seemed to be the only safe and practicable passway to the mills. The Chancellor perpetuated his injunction, and decreed a conveyance of the lease hold, as awarded by the arbitrators; and Brown has appealed to this Court.
The mills, and the use of them in the paper making business, were the chief, if not the entire object of Burkenmeyer’s purchase. The land was of little value being rough and broken, and formed but a very small part of the large consideration to be given for the property. The upper mill is rendered entirely useless without the use of the water privilege and dam above, and the value of the lower mill greatly impaired. That Burkenmeyer believed that the water and dam above, were embraced in his purchase and deed, cannot be doubted. And that Brown, by his representations and conduct, and fraudulent suppression of the true boundaries and condition of his claim, superinduced this belief, is equally clear.—Without the privilege of the water from the dam above, and the pipes and troughs conducting it to the mills, the object of his purchase is defeated, and the land acquired rendered comparatively valueless, and his large expenditures, in fitting up the mills and making preparations to carry on the business for which he purchased, has been spent to useless purpose.
Under all the circumstances of the case, we cannot therefore doubt, that the decree of the Chancellor should be sustained.
If it be conceded that, the statute of frauds and perjuries interposes a barrier to the extension of file boundaries of the deed, and the specific enforcement of the contract embracing the water and dam and land adjoining, it cannot be admitted to interpose any obstacle to a perpetuation of the injunction against Brown, restraining him *161 from molesting Burkenmeyer in the free use of the dam, pipes, troughs and water power, so essential to the use and profitable enjoyment of his purchase, and which by implication, must be regarded as embraced within the terms or contemplation of it.
The statute of frauds prohibits the bringing of any action upon, any contract for the sale of lands, unless there is some memorial of the sale in writing, signed by the party to be charged; consequently, where a deed is so drawn as not to include some land embraced by the verbal purchase, and there is no other writing—however fraudulent may have been the conduct of the vendor in producing that result, the purchaser has no means of obtaining the residue of the land. But, if the dispute be referred to arbitrators, and the parties agree in writing to abide by and perform the award, this writing will constitute such ‘a memorandum or note of the agreement’ as the statute requires; and, if the arbitrators award that the land shall be conveyed, a court of equity may compel the vendor to perform the award, and make the deed.
If A sells to B a tract of land in the center of a large tract owned by A, and conveys to B the title, such conveyance carries with it, by implication, the right to B of free ingress, egress, and regress, through the lands of A, to the land so conveyed to B: as such ingress, egress and regress are essential to the enjoyment of the purchase. So, though the deed to Burkenmeyer does not in terms embrace the dam, water privilege, or pipes and troughs conducting the water to the mills, as they were used before, and are essential to the use of the mills, which were the first and main object of the purchase, and were shown to be within the boundaries of the purchase, the right to use them, unmolested, will be implied as embraced within the purchase, and the Chancellor may take such steps against Brown, as to secure and protect Burkenmeyer in the use and enjoyment of them.
Besides, it would be unconscientious and iniquitous in Brown, to molest Burkenmeyer in the use of the water power, or interpose obstacles to the free and profitable enjoyment of property purchased from him, at a high price, under the impression superinduced by his fraud, that the boundary sold embraced the very stream and water power which he is attempting to obstruct.
If the arm of the chancellor is not long enough to reach and restrain such unconcientious wrong, it is short indeed.
But though the statute may have interposed an obstruction to the enforcement of the transfer of the lease, there being no writing, such obstruction no longer existed after the award was made, on a submission in writing, signed by the parties, in which each agreed to abide by and perform the award. And, with the award and other *162 circumstances appearing in this case, we have no doubt that Chancellor did right, not only in restraining Brown from obstructing Burkenmeyer in the enjoyment of the water power, but also, as the most effectual means of accomplishing the object, in compelling him to yield up to Burkenmeyer, the leasehold which he held for the same.
Had the contract, as made and understood between the parties, been reduced to writing, there could be no doubt, but that the Chancellor would enforce it.
As they have reduced it to writing, in agreeing to perform the award, we can perceive no good reason why the award should not be enforced, or why Brown should not be compelled to do that which he agreed in writing to do.
It is true, it was said by Lord Hardwick, in the case of Thompson vs Nowel & als. 1 Atkins, 62, “that a bill to carry an award into execution, when there is no acquiescense in it, or agreement afterwards to have it executed, would not lie.” But the award which he was then considering, was. an award for personalty, and the case made to turn upon other grounds. And the distinction is well established in numerous cases, between an award for personalty, and an award for land, or an award to pay money, and an award to do an act in specie with respect to the realty, as to convey. And the power of the Chancellor has been often exercised, in enforcing specifically, awards of the latter kind, when it has been refused in those of the former.
In some of the cases, it is true, a slight acquiescense is intimated in the statement of the case, without making the decision turn upon that point essentially; in others there seems to have been no acquiescence at all, or if any, not noticed by the Chancellor, as a ground for the enforcement of the award. Norton vs Mascall, 2 Vernon, 24; Hall vs Hardy, 3 Pr. Williams, 187; 2 Vernon, 444; 1 Wils. C. C. 44; 2 Comyn’s Digest, 2, 511 (2 K,) and the authorities there referred to; 4 Johns. Chy. Rep. 405, Bouk vs Wilber, 1 Maddock’s Chy. 401; Smallwood vs Mercer, 1 Wash. R. 290; Kunckle vs Kunckle, 1 Dal. 364; Pawling vs Jackman, Lit. Sel. Ca. 1; Swanston’s R. I. 54.
*163 In the latter case, Lord Eldon uses the following language:—
“That a bill will lie for a specific performance of an award, is clear, because an award supposes an agreement between the parties, and contains no more than the terms of that agreement, ascertained by a third person.” And though, in the case of McCullough vs Myers’ Ex’ors. Hardin, 199, this Court expressed an opinion against the power of the Chancellor to enforce an award specifically, without an after agreement or acquiescence, it is stated by the reporter of the case of Pawling vs Jackman, (who was counsel in the case of McCullough and Myers,) in a note appended to the case, that owing to the great dissatisfaction of the bar, the opinion was withdrawn, and the case decided upon other points.
Indeed, we can perceive no just ground to distinguish the case of an award to convey, made upon a written submission, from an agreement to convey. The same moral obligation to convey, if the award was fairly made, would seem to rest upon the defendant, in the one case as in the other. And good faith would require that he shoud carry into effect, and perform faithfully that which he had undertaken to perform, in the one case as well as in the other. And if he has not acquiesced in an award fairly made, by Judges of his own choosing, in good conscience, he ought to acquiesce, and ought to convey, if there be no equitable objections to its execution.
Nor will it do to say that the party desiring an enforcement of an award, has his remedy at law, upon his bond of submission, the party to an agreement to convey has his remedy at law also. But in both cases, the remedy at law is often very inadequate to the ends of justice.
And in both cases, more full and complete justice may be often done by a discreet exercise of the powers of the Chancellor, in the enforcement, specifically, of the undertaking of the parties.
But if the general proposition here intimated, were admitted to be doubtful, we cannot doubt that the award in the case before us should be enforced. The remedy at law, it is clear, would be wholly inadequate, and a resort to it would frustrate and defeat the whole object and pur *164 poses of the purchase. If the full value of the leasehold were recovered in damagess, it would afford no redress; and if the consideration given for the whole purchase, could be recovered, the complainant would be still left without remuneration for his large expenditures in repairing the mills and putting them into operation.
Besides, a strong moral obligation rests upon Brown, growing out of his fraud and imposition in the original contract, which greatly strengthens the appeal to his conscience, to carry into effect the award in this case.
Upon the whole, therefore, we cannot entertain a doubt that the Chancellor has not gone too far, if far enough, in the decree which he has rendered.
Wherefore, it is affirmed with costs.