CYRENIUS C. TORRANCE, Respondent, *v.* ANSEL F. CONGER, Appellant.

In a deed of a flouring mill and premises, was contained the following grant : " Together with the privilege of taking from the mill race 375 cubic inches of water under thirteen feet head, when there shall be so much water in said race," etc.—*Held*, the deed granted the privilege of taking from the race 375 inches of water and no more, under whatever head the grantee might take it, up to thirteen feet. (RAPALLO, J.)

In any aspect of the case, the reception of evidence of the comparative value of the use of the mill as it was, and as it would be, with a given amount of power, without any evidence that such amount of power would have been obtained, if the stipulated amount of water had been furnished, is error.

(Argued June 14th, 1871 ; decided November 10th, 1871.)

APPEAL by the defendant from a judgment of the General Term of the Supreme Court in the eighth judicial district, affirming a judgment entered on the report of a referee.

The action is to recover damages for the breach of the covenant, contained in a deed executed by the defendant to the plaintiff, conveying a flouring and grist-mill, and the premises upon which the mill is situated. The covenant, so far as relates to this action, is in the words following :

" Together with the privilege of taking from the mill-race 375 cubic inches of water under thirteen feet head, at all times, when there shall be so much water in said race more

than shall be necessary to drive, advantageously, the grist-mill upon above described premises, with two run of stone, one saw-mill, as the same is now used on said race, the camp factory, the furnace, the carding and cloth-dressing establishment, and the planing-mill, as said furnace, carding and cloth-dressing establishment and planing-mill are now used."

" The said party of the second part, is to bear and pay the proportion of the necessary expenses, of repairing and rebuilding the dam, abutments, gates and race, to conduct the said water, which the said quantity of water shall bear to the whole quantity of water, used for machinery on the said race; the party of the second part is to have the preference to the extent of water sufficient, prudently used, for two run of stones, over all other machinery on the race.   *   *   *   The water hereby conveyed, is not to be used for any other purpose than for driving machinery for custom grinding, flouring, and general milling business ; and said party of the first part, for himself, his heirs and assigns, covenants and agrees, with the said party of the second part, their heirs and assigns, not to erect any other grist-mill on said race, or convey any water privilege or right on or near said race, for the purpose of being used, or which the grantee or grantees, or their heirs or assigns, shall have the right to use, to run a grist or flouring-mill; and also said party of the first part covenants and agrees to and with the said party of the second part, to furnish said 375 inches of water hereby conveyed in said race, so that the same may be used at all times, except all such reasonable times as may be necessarily consumed in making repairs on said dam, rebuilding the same, and repairs on the abutments, gates and race.   *   *   *   It is understood the said party of the first part, is not to furnish the 375 inches of water in times of drought, when there is not sufficient water in the Cattaraugus creek, to supply the same as hereby conveyed, but is, during such scarcity, only to furnish such as runs."

Prior to the execution of the deed, in which the foregoing covenant was contained, there had been other privileges to

the water, in the same race, granted to the other people, by Mr. Plumb, the defendant's grantor, which was known to the parties, when the deed in question was executed and covenant made, namely: A deed bearing date January 20th, 1837, to Asahel Camp; the privilege in this deed is granted in these words, namely :

" Together with the privilege of taking from the mill-race, in Water street, where the flume, conducting water on the lot first above described, now intersects with the said race, water sufficient, by a careful and prudent use, to drive the necessary machinery used in the business of wool-carding, cloth-dressing, and manufacturing wools and cotton cloths, to be used for no other purpose, provided the quantity of water so used, at any time, shall not exceed ninety cubic inches, taken out under ten feet head, at all times, when there shall be so much water in said race, more than shall be necessary to drive, advantageously, a grist-mill with two run of stone, which has the preference in the right of drawing water from the race ; the said privilege of using water hereby conveyed, is subject to this condition : That the party of the second part shall bear and pay the proportion of the necessary expenses of repairing and building the dam and race, used to conduct the said water, which the said quantity of water shall bear to the whole quantity of water used for machinery in said race, together with the right and privilege of erecting a building on the said tail-race, west of the piece of land first above described."

Also, a deed dated May 27th, 1865, to Ashbell R. Sellew, Alexander W. Popple and Cyrenius C. Torrance, the plaintiff. The privilege in this deed is as follows:

" Together with the privilege of taking from the race 100 inches of water, or so much water as would pass through an opening of twenty-five inches by four inches, under ten feet head, at all times, when there shall be so much water in the race more than sufficient to drive, advantageously, a grist-mill with two run of stones, one saw-mill and the Camp factory, which have the preference in the right of drawing

water from the race, and which privilege is conveyed subject to the condition that the party of the second part shall pay, or cause to be paid, to the party of the first part, to their heirs or assigns, such a portion of all the necessary expenses hereafter incurred in keeping in repair and rebuilding the dam, abutments, head-gates, waste-gates, and race connected with said privilege, as the water used under this privilege shall bear to the whole quantity of water used by all the machinery in operation on the races at the time such expenditures shall be made."

The race, as constructed, when the covenant was made, could not give a head of thirteen feet. It would not, as constructed when the deed was drawn, hold water with a head of over eleven feet and six inches.

The race was not of sufficient capacity to furnish the 375 cubic inches of water, after furnishing the water which had been granted to the plaintiff and others, with prior right to use the water, over and above what was requisite to operate two run of stone.

Defendant did not furnish 375 feet of water under a thirteen feet head, nor an amount of water equal to it.

Upon the trial the following questions were asked by plaintiff's counsel:

"Q. What would the annual use of that mill be worth, with a water power of 375 inches, under thirteen feet head, or an amount of water equal to that amount, under a less head?

"Objected to by defendant's counsel as incompetent. 1st. Because it does not furnish a proper rule of damages; and, 2d. That it implies a construction of the covenant not warranted. It is not admissible under pleadings. Objection overruled, and exception.

"A. Rent worth $4,000 a year.

"Q. What was it worth as it was?

"Objection and exception were taken by defendant's counsel.

"A. $2,500 to $2,800.

" Q. What would the rent of the mill be worth with sixty-five horse power ?

" Same objection as last above. Objection overruled and exception taken by defendant's counsel.

" A. $3,500 to $4,000."

The referee gave judgment in favor of plaintiff for $1,206.65.

*J. Ganson,* for appellant. The court, in construing the grant, will look at the surrounding circumstances. (*Strong* v. *Benedict,* 5 Conn., 210, 220; *Kennedy* v. *Scoville,* 12 Conn., 317, 324; *Blossom* v. *Griffin,* 3 Kern., 569.) If the water is in the race, the remedy of plaintiff is against the one diverting it. (*Kennedy* v. *Scoville,* 12 Conn., 317.) Plaintiff could remedy any difficulty which prevented his obtaining his just supply. (*Elliot* v. *Shepard,* 25 Maine, 371.) The referee's construction of defendant's covenant is erroneous. (*Bordwell* v. *Ames,* 22 Pick., 362–368.)

*C. C. Torrance,* for respondent. That construction is to be adopted most favorable to the covenantee. (*Marvin* v. *Stone,* 2 Cow., 781; 1 Chit. on Cont., 95.) Also that which renders covenant operative. (*Archibold* v. *Thomas,* 3 Cow., 284; *Airy et al.* v. *Merrill,* 2 Curtis R., Circuit Court U. S., 8, 10; *Palmer* v. *Warren Ins. Co.,* 1 Story, Cir. Ct. U. S. Rep., 364; *Snell et al.* v. *Ins. Co.,* 2 Sumn., Cir. Ct. U. S. Rep., 380; *Blacket* v. *Ins. Co.,* 2 Cromp and Jerv., 244–251.) The covenant is a continuing one. (*Crane* v. *Beach,* 2 Barb. S. C. R., 121; *Crane* v. *Beach,* 2 N. Y. R., 92; 2 Saunders, 337, 422, note " A."; 2 Cowen & Hill's Notes, 966.)

RAPALLO, J. The Supreme Court, at General Term, held that the words " 375 inches of water under thirteen feet head," as used in the deed from the defendant, were not controlling as to the head under which the water should be taken or furnished, and did not bind the defendant to furnish

any particular head, but were used simply as a measurement of the quantity of water which the plaintiff was entitled to draw from the defendant's race.

According to this construction, the plaintiff had the right to take the water under any head he might elect, and find practicable, so long as he did not consume a greater quantity of water than that which would flow through an aperture of 375 square inches, under a head of thirteen feet.

Consequently, if he took the water under a head of less than thirteen feet, he had the right to enlarge the aperture sufficiently to permit the passage of the same aggregate quantity of water in a given time, which would, during the same time, pass through an aperture of 375 inches if taken under a head of thirteen feet.

The head was, therefore, a matter which did not concern the defendant, but which the plaintiff was authorized to regulate at his own will and upon his own premises, as might according to his judgment, best suit his machinery, so long as he also regulated the size of the aperture in such manner as not to draw from the race a greater quantity of water than he had the privilege of taking.

But the court did not decide that the plaintiff had the right to a sufficient quantity of water to enable him to obtain, under a head of less than thirteen feet, the same amount of *power* which would be given by 375 inches under thirteen feet head. It was not proved or found, that under a diminished head, the same amount of power could be produced, without drawing from the race a much greater quantity of water than that which was indicated by the terms of measurement employed in the grant.   Nor was that fact capable of proof, as physical laws establish the contrary.

The 375 inches of aperture would, no doubt, pass more water if the head were thirteen feet, than if it were but eleven and a half feet.   But it was not and could not be shown that an addition to the head would increase the quantity of water drawn from the race, in as great a ratio as that in which it would increase the power.

Assuming that the true construction of the deed is, that the defendant granted a specified quantity of water, without being bound to furnish the head, it would be manifestly wrong to hold him liable, under any circumstances, to part with or furnish more than the stipulated quantity, or, in case of his failure to furnish the stipulated quantity, to charge him in damages for more than the actual deficiency.

According to the decision of the Supreme Court, the damages recoverable by the plaintiff for a temporary or partial failure in the supply of water, should have been the difference between the value of the use of the mill with the amount of water actually furnished in the race, and what it would have been worth if the defendant had furnished in the race the stipulated quantity of water, viz., sufficient to enable the plaintiff to take under the existing head the same quantity of water which would have passed through an opening of 375 inches, had the head been thirteen feet.

But, instead of following this rule, and taking evidence as to the annual value of the mill under the last mentioned condition, the referee received, under exception, the evidence of various witnesses as to the comparative value of the use of the mill as it was, and with a given amount of power, without any evidence that the amount of power with which its actual state was thus compared, would have been obtained under the existing head, if the stipulated amount of water had been furnished.

One witness was allowed to state, under exception, that, with a water *power* of 375 inches under thirteen feet head, or an amount of water equal to that amount, at a less head, the mill would have been worth $4,000 per annum, while as it was, it was worth only $2,500 to $2,800 per annum. Another, that with a *sixty-five horse power*, it would have been worth $3,500 to $4,000 per annum; there being no proof that the stipulated quantity of water, under the existing head, would give as much as sixty-five horse power.

The court at General Term concede that this evidence was erroneously received, as not furnishing a proper rule of dam-

ages, and also as being based on a construction of the covenant not warranted; but say that the case shows that the referee, in his final disposition of the case, disregarded the construction and the measure of damages implied by the questions and answers, and that the receipt of this incompetent evidence has worked no possible injury to the party excepting.

But unfortunately for this position, it appears that there is no evidence in the case, on the subject of the comparative value of the use of the mill, which is not covered by this exception, and the finding of the amount of damages must therefore have been based upon that incompetent evidence. The question asked of the plaintiff at the close of the case, what the use of the mill would be worth with 375 inches of water under head of eleven and a half feet, might have drawn out an answer which would have formed some basis of calculation, as that head was attainable, and the quantity named was within that to which the plaintiff was entitled; but the answer to the question was not direct or clear. It was, that " with the water supplied so that we can run the mill, under eleven and a half feet head, worth per year $4,000." Taken in connection with the previous testimony on the part of the plaintiff, that a power of 375 inches, with thirteen feet head, or seventy horse power, was necessary to run the mill, the witness can hardly be understood as saying, that in the case supposed by the question the mill would have been worth the sum named. The case states that it contains all the evidence, and I am unable to find any, except that which falls under this exception, upon which the findings of the referee as to the amount of damages, can have been based. The findings themselves are capable of the construction that the referee held the defendant liable for not furnishing an amount of water equal in power to 375 inches under thirteen feet head.

Upon a careful examination of the deed and of the evidence, I came to the conclusion that the deed should be construed as granting the privilege of taking from the race 375 inches of water and no more, under whatever head the plain-

tiff might take it, up to thirteen feet, when there was that amount in the race, over and above what was taken by the other mills, and that if he failed to obtain the full amount of head under which he was entitled to use the water, it was either his misfortune or his fault. The height of the pond and race, and the location of the mill, and the fall to the bed of the creek opposite the mill, were visible at the time of the purchase. The plaintiff could calculate the head that was attainable. The location of the wheels was under the control of the plaintiff on his own premises. He secured the privilege of taking the water under the head which he deemed requisite. The defendant did not agree to furnish the head, but did grant to the plaintiff the privilege of deepening the tail race, and there is nothing to show that the head could not have been readily obtained in that way. The bottom of the tail race was of plank, and it could not be necessary to deepen it merely for the purpose of cleaning it or removing obstructions. These considerations led me to the conclusion that the better construction of the deed was that it gave to the plaintiff only a privilege of taking 375 inches under a head not exceeding thirteen feet, and that he could not in place of taking the whole amount of head, enlarge the number of inches named in the deed.

The court, however, is divided in opinion as to the interpretation of the grant and of the covenant, and nothing is now decided in respect to them; but in any aspect of the case, I am of opinion that the referee erred in receiving the evidence before referred to, and that for that reason a new trial should be granted, with costs to abide the event.

CHURCH, Ch. J., and ALLEN and PECKHAM, JJ., concur.

GROVER, J., dissents; FOLGER, J., not voting.