SETH WELLS, Respondent, *v.* JOHN W. GARBUTT, Appellant.

*Court of Appeals, April 26, 1892.*

Affirming 56 Hun, 642, mem.

1. *Easements. Deed.*—Where the owner of two parcels of land conveys one by an absolute and unqualified deed, an easement will be implied in favor of the land retained by the grantor and against the land conveyed to his grantee, only in case the burden is apparent, continuous and strictly necessary for the enjoyment of the former.

2. *Same. Necessity.*—While absolute physical necessity need not be shown,. there must be a reasonable necessity, as distinguished from mere convenience.

3. *Same. Implied reservation.*—The doctrine of implied reservation rests upon the presumed intention of the parties as it is gathered from the conveyance, interpreted in the light of the circumstances surrounding them when it was executed and with reference to which, as existing facts, they are supposed to have contracted.

4. *Appeal. Presumption.*—As regularity is presumed, the one, who claims that an error was committed, must cause it clearly to appear ; otherwise effect will be given to the presumption by affirming the judgment.

Appeal from a judgment of the general term of the supreme court in the fifth judicial department, affirming a judgment entered upon the decision of the court on trial at special term.

This action was brought to restrain the defendant from so obstructing the waters of Allen's creek, in the town of Wheatland, county of Monroe, as to cause them to set back upon the lands of the plaintiff.

The trial court found that Allen's creek is a natural stream of water flowing in an easterly direction across lot 37 to lot 38, and thence across lot 43 in said town. The defendant is the owner of a flour and plaster mill on lot 43, the machinery of which is propelled by the water of said stream, impounded by a dam on said lot, which until the year 1886 set back the water across lot 38 on to lands now belonging to the plaintiff in lot 37. For more than fifty years prior to 1887 there was a dam, rebuilt at intervals, on substantially the same site, creating a water power used to run mills owned by the defendant and his grantors continuously since 1828. Prior to July 1, 1856, Philip Garbutt, father of the defendant, owned lots 37 and 43 with the mill and dam on the latter, and had acquired the right from the owner of lot 38 to cause the water to flow back over it. On the day last named said Philip Garbutt gave a mortgage upon forty-one acres of lot 37 to one Fairchild, to secure the payment of $1,600, without reserving the right to flow any

part of the lands thus mortgaged, which laid on both sides of the stream. At the date of said mortgage the mills were in operation, and the dam, maintained by Phillip Garbutt on lot 43, when it was filled, set back the water across and beyond the mortgaged premises. In 1858, Phillip Garbutt conveyed lot 37 to the defendant, subject to said mortgage, and at the same time he also conveyed to him the mill property on lot 43. June 27, 1888, pursuant to a judgment of foreclosure based upon said mortgage, the premises therein described were sold and conveyed to the plaintiff, who has ever since owned the same in fee and has been in possession thereof. Neither in said judgment nor in the referee's deed was there reserved to the defendant any right to cause the water of Allen's creek to flow back onto any part of the premises so conveyed to the plaintiff. While the defendant owned lots 37 and 43, and until within a short time before the foreclosure sale, he maintained said dam at its accustomed height, the same as it had existed continuously since 1828.

In 1887 a portion of the dam was carried away by high water, and, when this action was commenced, the defendant had partly rebuilt it, and intended to carry it up to its former height, the effect of which would be "to set back the waters to some extent upon that part of lot 37 owned by the plaintiff, and to interfere with and obstruct the natural flow of waters of Allen's creek thereon."

After finding the foregoing facts in substance, the trial court found as conclusions of law that there was "no implied reservation to the defendant of the right to set back the waters of Allen's creek upon the lands of the plaintiff, which he bought at the foreclosure of said mortgage;" that the defendant had no right to so set back said waters as to flood any part of plaintiff's premises, "or to render any portion thereof wet, spongy or unfit for agricultural purposes." A permanent injunction was awarded accordingly. As no part of the evidence appears in the appeal book, the questions involved are raised by exceptions to the conclusions of law.

*John J. Snell,* for appellant.

*Porter M. French,* for respondent.

VANN, J.—Both parties unite in the position that the plaintiff acquired through the sale in foreclosure the entire estate of both mortgagor and mortgagee as of the date of the mortgage. Rector, etc., *v.* Mack, 93 N. Y. 488; Pardee *v.* Stewart, 37 Hun, 259, 262; 2 R. S. 192, § 158; Code Civ. Pro. § 1632. The question presented for decision, therefore, is whether a riparian owner, who has imposed a burden on one part of his land for the benefit of another part, upon conveying the former without express reservation, should be held under the circumstances of this case to have impliedly reserved the right to continue the burden. As a grantor cannot derogate from his own grant, while a grantee may take the language of the deed most strongly in his favor, the law will imply an easement in favor of a grantee more readily than it will in favor of a grantor, and this distinction explains many of the apparent inconsistencies in the reported cases. Some learned judges, in considering what may be termed an implied grant, as distinguished from an implied reservation, without, however, mentioning the distinction, have used language apparently applicable to all easements existing by implication, when it was in fact intended to be limited to those existing in favor of a grantee.

Others, in deciding that an easement was impliedly created by a grant and conveyed to the grantee, have gone farther in their discussions than the point involved required, and have broadly declared the rule to be reciprocal and applicable alike to benefits conferred and burdens imposed, provided the marks of either were open and visible. Such was the case in Lampman *v.* Milks, 21 N. Y. 506, where the discussion outran the decision, for while it was decided that, on the facts then appearing, an easement should be implied in favor of the grantee against the grantor and his remaining

lands, it was asserted that under like circumstances an easement would be implied in favor of the grantor against the grantee and his lands. The latter proposition was involved neither in the case decided, nor in any of those relied upon to support it, except such as have since been overruled, either expressly or impliedly. So much has been written upon the general subject of implied reservation that a review of the authorities is no longer practicable in an opinion of reasonable length, and we shall content ourselves by announcing the rule applicable to the facts of this case, and citing a few out of the many authorities upon which it is based.

Where the owner of two parcels of land conveys one by an absolute and unqualified deed, we think that an easement will be implied in favor of the land retained by the grantor, and against the land conveyed to his grantee, only in case the burden is apparent, continuous and strictly necessary for the enjoyment of the former. Outerbridge *v.* Phelps, 13 Abb. N. C. 117; Shoemaker *v.* Shoemaker, 11 Id. 80; Scrymser *v.* Phelps, 33 Hun, 474; Dales *v.* Ceas, 5 W. Dig. 400; Burr *v.* Mills, 21 Wend. 290, 292; Sloat *v.* McDougall, 30 St. Rep. 912; Butterworth *v.* Crawford, 46 N. Y. 340; Longendyke *v.* Anderson, 101 Id. 625, 630; Buss *v.* Dyer, 125 Mass. 287; Mitchell *v.* Seipel, 53 Md. 251; Burns *v.* Gallagher, 62 Id. 462; Brown *v.* Burkenmeyer, 9 Dana, 159; S. C. 33 Am. Dec. 541; McDonald *v.* Lindall, 3 Rawle, 492; Dillman *v.* Hoffman, 38 Wis. 575; O'Rorke *v.* Smith, 11 R. I. 264; Cooper *v.* Maupin, 35 Am. Dec. 464, note; Collins *v.* Prentice, 15 Conn. 39; S. C. 38 Am. Dec. 61; Wheeldon *v.* Burrows, L. R. 12 Ch. Div. 31; Crossley v. Lightowler, L. R. 2 Ch. App. Cas. 478; Suffield *v.* Brown, 4 De G. J. & S. 185; Russell *v.* Watts, L. R. 25 Ch. Div. 572; Brown *v.* Alabaster, 37 Id. 504; Washburn on Easements, 104, 4th Ed.; Gould on Waters, §§ 357, 362; 6 Am. & Eng. Encyc. 143; 4 R. S. 8th Ed. 2461, § 1.

The trial court found " that at the time of the making and

execution of the said mortgage said mills were in operation.
and there had been maintained a dam across said creek
through said lot 43, which set the water back up the creek to
lot 37." It was not expressly found, however, that there
was any apparent overflow at the time when the mortgage or
the deed was given, or that the mortgagee or the grantee had
any notice of the facts when either instrument was accepted.
While the dam was high enough to overflow the forty-one
acres when the pond was full, it does not appear, unless by
implication, that any standing water was visible at the date of
the mortgage, or that there was then any visible sign indicat-
ing " to a person reasonably familiar with the subject, upon an
inspection of the premises," that water had stood there in the
past. Butterworth *v.* Crawford, 46 N. Y. 349. At the date
of the deed the dam was not in use, as it had been partly
swept away by a freshet. Both the mortgage and the deed
were given at a season of the year when the water of streams
in this state is ordinarily low. Thus it is by no means clear
from the facts as found that at the date of either instrument
upon which the plaintiff's title is founded, there was any
visible overflow, or apparent sign of previous overflow. As
regularity is presumed, the one who claims that an error was
committed must cause it to clearly appear, or effect will be
given to the presumption by affirming the judgment appealed
from. Tracey *v.* Altmyer, 46 N. Y. 598; Appleby *v.* Erie
Co. Sav. Bank, 62 Id. 12, 18.

But even if the findings, when liberally construed, show
that the alleged easement was apparent and continuous, they
utterly fail to bring it within the rule of strict necessity. It
does not appear that the water power of defendant would
be materially diminished if he were not permitted to over-
flow the lands in question. The maximum overflow affects
but little more than two acres of plaintiff's land, which, if
the dam should be restored, would be rendered " wet or
spongy" and unfit "for agricultural purposes."

The defendant claims that the capacity of his mill, when

the pond is full, is about fifty barrels of flour each day, and that the fall at the bulkhead is eleven feet, but it does not appear what the capacity or fall would be with the overflow restricted to the lands which he has the right to overflow. We are not informed as to the fall of the stream as it flows through the land affected, the grade of the banks, the depth of the water when the overflow is greatest, or the quantity of water that was accumulated or stored on the two acres by the old dam. For aught that appears the advantage of flowing such a small quantity of land was so trifling as to raise the presumption that the mortgagor willingly abandoned it when he omitted to mention or reserve it from the operation of the mortgage. The doctrine of implied reservation rests upon the presumed intention of the parties as it is gathered from the conveyance, interpreted in the light of the circumstances surrounding them when it was executed and with reference to which, as existing facts, they are supposed to have contracted. If it appeared that the mill could not be operated without overflowing the plaintiff's land, it would be cogent if not conclusive proof of that strict necessity which does not create the easement, but is simply evidence as to the intention of the parties. If, on the other hand, it appeared that owing to the slight declivity the accumulation of water was insignificant and that the mill property was worth substantially as much without the right in controversy as with it, there would be no proof of "necessity" and nothing upon which an implication in favor of the mortgagor or grantor could rest. Even the dimensions of the pond are not furnished us, and we cannot compare its extent with and without the two acres, although it appears to extend partly across one lot and entirely across another, before it reaches the lands of the plaintiff. When it is claimed that an easement exists by necessity, evidence of the necessity must be given. Stuyvesant *v.* Woodruff, 47 Am. Dec. 156; Gayetty *v.* Bethune, 14 Mass. 49, 55; Oliver *v.* Pitman, 98 Id. 50.

While absolute physical necessity need not be shown as in

28

the case of land-locked premises, or the support of a wall, there must be a reasonable necessity, as distinguished from mere convenience.    Root *v.* Wadhams, 107 N. Y. 384; Hollenbeck *v.* McDonald, 112 Mass. 250; Berry *v.* Brown, 6 Coldw. 98; Cooper *v.* Maupin, 35 Am. Dec. 464, note.

But in the case before us, where certainty is required, all is conjecture.    There is neither finding nor evidence that, in order to run the mill with substantially undiminished efficiency, it is necessary to maintain the dam at such a height as would cause the water to flow over the plaintiff's land.

Upon the facts as found, we think it would be unreasonable to hold that the mortgagor intended to reserve any right in the nature of an easement over the mortgaged premises, or that the mortgagee understood when he accepted the security that it was cut down in extent and reduced in value by the fiction of an implied reservation.

The judgment should be affirmed, with costs.

All concur, except HAIGHT, PARKER and LANDON, JJ., dissenting.

## NOTE ON " APPARENT EASEMENTS."

Where one of two tenements, or a portion of an entire estate, is sold, the purchaser takes the tenement or portion sold, with all the benefits and burdens which manifestly appear, at the time of the sale, to belong to it, as between it and the property which the vendor retains.    Paine *v.* Chandler, 23 St. Rep. 357; Lampman *v.* Milks, 21 N. Y. 505; Curtiss *v.* Ayrault, 47 Id. 73; Rogers *v.* Sinsheimer, 50 Id. 646; Roberts v. Roberts, 55 Id. 275; Simmons v. Cloonan, 81 Id. 557.    In these cases, the court distinguishes between continuous and discontinuous easements, and holds that, in regard to the latter, only such as are absolutely necessary to the enjoyment of the estate pass upon a severance of tenements by the owner.    This is really nothing more than a reiteration of the doctrine of Lampman *v.* Milks, *ante.* The substance of the distinction between the two classes of easements is stated in the opinion of the court, in the case last cited, to be that such as are not dependent for their enjoyment upon any actual interference by man are continuous in their nature; and those, the enjoyment of which cannot be had save by the interference of man, are discontinuous and pass