Mulrooney v. O'Bear.

---

## T. MULROONEY, Appellant, v. F. O'BEAR and G. DEAVERS, Respondents.

### 'St. Louis Court of Appeals, May 9, 1899.

Injunction: DEED: APPURTENANCES: IMPLICATION. In the case at bar when the Hodiamont Realty Company conveyed their lots by deed to plaintiff they conveyed to him as appurtenant thereto the right to have water flow through the Maple avenue pipe, and thence, by the supply pipes to his premises on such terms as he might be able to contract with the city, as if the pipe and the meter had been conveyed by express terms in the deed.

*Appeal from the St. Louis City Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

TRANSFERRED TO SUPREME COURT.

J. R. WARFIELD and F. A. HEIDORN for appellant.

The court erred in rejecting the testimony in reference to transactions between defendant O'Bear and Phil. Chew in reference to sale of property purchased by Chew. High on Inj. [3 Ed.], secs. 748, 1549, p. 1178; Kerr on Inj. [2 Ed.], sec. 25, p. 25; Michael v. St. Louis, 112 Mo. 610; 7 Am. and Eng. Ency. of Law, 18 et seq. and cases cited; Midland L. Co. v. Kruger, 52 Mo. 418; Longworth v. Aslin, 106 Mo. 155; Pelkinton v. Ins. Co., 55 Mo. 172. Plaintiff's deed conveyed the Hodiamont Company's full title to the water and sewer pipes and meter, subject only to the like use and enjoyment of their privileges by other property owners of the subdivision. 3 Washb. Real Prop. [3 Ed.] 338, 340; 3 Washb. Real Prop. [5 Ed.] 419, sec. 627; Tiedeman on Real Prop. [2 Ed.] 842; Williams on Real Prop. [17 Ed.] 478, 483, 689; Washb. on Easements and S. [4 Ed.] 40; 1 Am. and Eng. Ency. of Law, 641 to 645, notes and cases. The deed should be construed most strongly against the grantor, and in light of the surrounding circumstances under which it was made. Clemens v. Rannels, 34 Mo. 579; Nelson v. Brodhack, 44 Mo. 596; Jones v. De Lassus, 84 Mo. 541. And the acts of the parties for a series of years are admissible in its construction. Jones v. De Lassus, supra. The deed of transfer of the Hodiamont Company to defendant O'Bear, conveyed no title, and is void as to plaintiff and his associate property owners acquiring prior to the recording of the conveyance. R. S., secs. 2395, 2418, 2419, 2420, 2431 and 2399; 3 Washb. Real Prop. [3 Ed.] 254, 257; 5 Am. and Eng. Ency. of Law, 445 and cases; Green v. Yarnell, 6 Mo. 326.

R. A. JONES and C. C. CROUCH for respondent O'Bear, and ZACH. J. MITCHELL for respondent Deavers.

Appellant appears as a member of a so-called voluntary, unincorporated association. Not as a trustee for it. All

claiming relief must be parties, and if plaintiff seeks to try the title to this water system in this proceeding, there is a defect of parties plaintiff. Kraft, Holmes Grocer Co. v. Crow, 36 Mo. App. 288. Appellant makes no tender for the water of respondent which he has used, nor for that which he will continue to use, and, under the maxim that he who would have equity must do equity, has no standing. Daniel v. Water Works Co., 48 Mo. App. 273; Johnson v. Duer, 115 Mo. 366. An easement can be created only by deed or adverse user for statutory period. Fuhr v. Dean, 26 Mo. 116. Conceding that appellant acquired an easement to have water furnished him upon making payment for it, he did not acquire title to the waterworks system itself. Tatum v. St. Louis, 125 Mo. 648; Ellinger v. Railway, 112 Mo. 526.

BLAND, P. J.—The Hodiamont Realty Company (incorporated), in 1891 and 1894, laid off into building lots, streets and alleys, a subdivision of land just west of the city limits of the city of St. Louis, which it duly platted, acknowledged and designated as Hodiamont, and caused the same to be recorded in the recorder's office of St. Louis county (where the land is situated). Maple avenue road runs north and south on the western boundary line of Hodiamont. The city waterworks of the city of St. Louis has a supply water pipe just south of the south boundary line crossing Maple avenue, near the southwest corner of Hodiamont. The object had in view by the realty company when it platted its lands, was to sell the lots to persons seeking locations for residences, and in order to make the property available for that purpose, it, by permission of the road overseer of Maple avenue, laid a water supply pipe in the avenue bordering on its property, which pipe by permission of the city authorities, it connected with the city waterworks, and put in a large water meter at the point of connection. It also laid in the alleys of Hodiamont service water pipes connecting them with the Maple avenue

supply pipe, and at the same time constructed sewers and made the necessary connections with the water system. After the water system had been laid, the plaintiff purchased of the realty company parts of lots 96 and 97, in Hodiamont and received a general warranty deed conveying the ground and all the rights, immunities, privileges and appurtenances to same belonging. The dwelling on these lots was arranged to receive water from a supply pipe laid in an alley back of the premises and the necessary connections had been made to supply water to the dwelling. The realty company continued to supply the residents of Hodiamont with water through this system, and collected a water tax from them, until it sold all the lots, divided its assets among the stockholders, and disincorporated. Afterwards the citizens appointed an agent, who took out a water license from the city and paid for the same out of a common fund provided by the residents. This continued until June, 1897, when the water commissioner of the city recognized defendant O'Bear as the owner of the water pipes and issued a license to him, refusing at the same time to give a license to the appointed agent of the residents of the subdivision. After receiving this license O'Bear demanded payment of water rates (same as city), of plaintiff and other residents, and threatened to cut off the supply if the rates demanded were not paid. It is also in evidence that defendant Deavers, by direction or permission of O'Bear, has laid pipes and made connections with the Maple avenue pipe so as to convey water in territory beyond the limits of Hodiamont, and there is evidence that the capacity of the Maple avenue pipe is not more than sufficient to supply Hodiamont. Plaintiff for himself and others similarly situated brought suit to enjoin defendants from any and all interference or threatened interference with the Hodiamont water supply. A temporary injunction was granted, but was, on final hearing, dissolved and the bill dismissed. From this judgment the plaintiff appealed.

As we gather from the pleadings and evidence, O'Bear does not claim any interest in nor control over the service pipes which were laid in the alleys of Hodiamont, but claims to own and a right to control the supply pipe that was laid in Maple avenue. He bases this claim on an assignment to him from the realty company made June 1, 1893, for a nominal consideration of "all the right, title and interest which the realty company had in and to the water pipes and water meter in Maple avenue running west from city limits to Hodiamont." This assignment was made after the realty company had by deeds conveyed all of its holdings in Hodiamont, and only a few days prior to its dissolution and disincorporation. In none of the conveyances by the realty company was there any reservation of the Maple avenue pipes or of the water meter. If the plaintiff and other purchasers of the Hodiamont lots, by their several deeds of conveyances acquired as appurtenant to their property the right to have APPURTENANT. water, supplied by the city, flow through the Maple avenue pipes to supply their premises with water, as against the grantor (the realty company), then the judgment should be reversed and judgment given for the plaintiff perpetually enjoining defendants from intermeddling with such right. If no such right passed, the defendant O'Bear under the assignment made to him has the right to control the flow of water through these pipes, and the judgment should be affirmed. "It is well settled law that the grant of a thing will include whatever the grantor has power to convey which is reasonably necessary to the enjoyment of the thing granted; and a grant of a house with appurtenances passes a conduit by which water is conveyed to it." 3 Washburn on Real Property [3 Ed.], 719; Farmer v. Water Co., 56 Cal. 11; Meek v. Breckenridge, 29 Ohio St. 642; 1 Am. and Eng. Ency. of Law, 641. In Badger Lumber Co. v. Marion Water Supply, Electric Light and Power Co., 48 Kan. 182, it is said by the court: "That an appurtenance is a thing belonging to

another thing as principal, and passing as an incident thereto; and that poles planted in the streets of a city necessary to transmit electric light from a power house are appurtenances." The same ruling was made by this court in Southern Electric Supply Co. v. Rolla Electric Light and Power Co., 75 Mo. App. 622, and in Forbes v. Williamette Falls Electric Co., 19 Ore. 61. In Lampman v. Mills, 21 N. Y. 505, it is said: "That where the owner of land sells a part thereof, he impliedly grants to the grantee all of those apparent and visible easements which are necessary for the reasonable use of the property granted and which are at the time used by the owner of the entirety for the benefit of the part granted." In Cave v. Grafts, 53 Cal. 135, the court says: "The general rule of law is that where a party grants a thing, he by implication grants whatever is incident to it and necessary to its beneficial enjoyment. The incident goes with the principal thing. The idea and definition of an easement to real estate granted is a privilege off and beyond the local boundaries of the lands conveyed." In Missouri Pacific Railway Co. v. Maffit, 94 Mo. 56, our supreme court says that the word "appurtenant" has no inflexible meaning, but must be construed in connection with the nature and subject of the principal thing granted." And, as is said in Wells v. Garbut, 132 N. Y. 430, "as a grantor can not derogate from his own grant, while a grantee may take the language of the deed most strongly in his favor, the law will imply an easement in favor of the grantee more readily than it will in favor of a grantor." To the same effect is Johnson v. Jordan, 2 Met. 234, opinion by Chief Justice Shaw. The service pipes and sewers would be entirely useless without the supply pipe laid in Maple avenue. This latter pipe is, to the Hodiamont water system, the fountain head of supply, and he who has the control of this pipe has control of the entire system, and may at his pleasure supply or cut off the supply of water to the inhabitants. But the contention is that the grantees of the Hodiamont property

can have no property interests in the Maple avenue pipe; that
it was laid there not under any grant of right, but by per-
mission only. The pipe is there by the license of·the road
overseer, it is connected with the city's water system also by
permission. These licenses may ripen into an
EASEMENT.      easement by prescription, but whether they
may do so or not is immaterial here; they are
there, and according to the testimony furnished inducements
and entered into the consideration of the purchases made by
plaintiffs and others, and being necessary to the reasonable
enjoyment of the property, passed as appurtenant thereto. If
the realty company had a property right in the Maple avenue
pipes which was capable of being assigned to O'Bear, might
it not, by implication convey that same right to the purchasers
of the Hodiamont property? And is not O'Bear estopped by
the very instrument under which he claims, to say that the
realty company had no such right in these pipes and meter as
could be passed by a deed of conveyance? It was not necessary
that the realty company should own the ground in which the
pipe in Maple avenue was laid to make it appurtenant to the
Hodiamont property. The fact that they were placed there
by the realty company for the purpose of furnishing a conduit
for water supply and was used for that purpose and that the
plaintiff and others made their purchases with these facts in
view, is sufficient to make them appurtenant to the Hodiamont
property. Simmons v. Winters, 21 Oregon 35 (s. c., 28
Am. St. Rep. 727), is a case presenting a parallel state of facts
to the one at bar. There Cox and Rowland from whom
Winters derived title had dug an irrigating ditch from a creek
over and across unoccupied public lands to convey water to
irrigate their lands. In a controversy between Simmons and
Winters as to the right of the use of the ditch, it was held that
when Cox and Rowland conveyed by their deeds their lands
with the appurtenances, they also conveyed their interests re-
spectively in the·ditch and water right which was connected

therewith and necessary to the cultivation and enjoyment of the lands, as much so and as certainly as if they had declared so by the expressed terms of their deeds. With equal propriety it may be said that when the Hodiamont Realty Company conveyed their lots by deed to plaintiff, they conveyed to him as appurtenant thereto the right to have water flow through the Maple avenue pipe and thence by the supply pipes to his premises on such terms as he might be able to contract with the city as if the pipe and the meter had been conveyed by express terms in the deed. Our conclusion is that O'Bear has no right, title or interest in the water meter or the Maple avenue pipes; that these are appurtenant to the Hodiamont property, and as such passed from the realty company to the purchasers of that property, and that the owners of the Hodiamont lots have the sole right to use and control the same. The judgment is reversed, with directions that the trial court set aside its order dissolving the temporary restraining order, and that it enter judgment for plaintiff perpetually restraining defendants from using or interfering with the said water meter and the Maple avenue water pipes described in the petition.

Judge Bond concurs; Judge Biggs dissents and asks that the cause be certified to the supreme court because in his opinion, the majority opinion is opposed to the ruling of the supreme court in Barrett v. Bell, 82 Mo. 110. The cause is accordingly certified to the supreme court for its decision.

### DISSENTING OPINION BY JUDGE BIGGS.

In 1891 the Hodiamont Realty Company owned ten acres of land immediately west of the western limits of the city of St. Louis and situate in St. Louis county. There were two small tracts between this land and the city. The land is now known as the "Hodiamont subdivision," the company having subsequently (to wit in the spring of 1892) divided it into lots and streets. Two strips of land extending north and south from Maple avenue through the subdivision and

designated as alleys in the majority opinion, were reserved from sale by the realty company and were not dedicated to public use. With the view of selling the lots the company upon a parol license from the road overseer of the district established a water main on a public road known as Maple avenue, which was the southern boundary of the subdivision, and two supply pipes were laid north from Maple avenue along the two strips of land to Bartmer avenue, the northern boundary of the subdivision. Connection was made with the water system of the city at the eastern terminus of Maple avenue. A water meter was put in at the point of connection, which was the western limit of the city's system. The company built a house on lots 96 and 97 of the subdivision. The house was constructed with the necessary pipes. When the house was completed, to wit, March, 10, 1892, the company sold the house and lots to the plaintiff. At the date of the sale the pipe leading from the house had not been connected with the supply pipe in the rear of the premises. In 1893 the company, having disposed of all lots in the subdivision, wound up its affairs and relinquished its charter. Before doing so it sold to the defendant Frank O'Bear the water pipes and meter and all appurtenances. The tax charged by the city for water supplied to the residents of the subdivision was one hundred and sixty-five dollars for six months. Prior to June, 1897, the business of looking after the supply of water was intrusted to a voluntary company, composed of residents of the subdivision. This company paid the water tax to the city and imposed a water tax on the inhabitants of the subdivision suffi- cient to meet the charges of the city. In June, 1897, O'Bear asserted his right to the control of the water pipes and meter, and in a contest between him and the voluntary company of citizens, the water commissioner of the city issued the license to him. After procuring the license O'Bear imposed a water tax against each householder in the subdivision, which was at the same rate as that charged by the city. The plaintiff

refused to pay the license tax, and O'Bear having threatened to shut off the water from his house, he instituted this suit to enjoin him from carrying his threat into execution.    After reciting substantially the foregoing facts the bill charged "that defendants or either of them have no rights in said water meter, sewer or water pipes or any of them and have no right to control or manage the same as against plaintiff and the other property owners of the subdivision. That the threatened interference with the right of plaintiff and such property owners to the uninterrupted control, use and management of said entire system of water, meter, water pipes and sewer and of the water supplied by and through the same will cause irreparable injury and continuing loss and damage to plaintiff and said numerous property owners and to the lands so owned by them, for which no adequate remedy exists at law."

O'Bear in his answer pleaded his purchase of the water pipes and meter and his right thereunder to manage the same and to charge for the water.    He also averred that the tax imposed by him for water was reasonable, being the same as that imposed by the city.    In the reply the plaintiff denied the alleged purchase by O'Bear, and averred that at the time he pretended to have bought the water system the realty company had sold all of the lots in the subdivision and had wound up its business growing out of the sales and surrendered its charter.    The plaintiff also averred that under the convey-ances made by the realty company a common and exclusive right to use the water pipes and meter for the purpose of obtaining a supply of water was vested in the grantees therein. Upon the hearing of the cause the temporary injunction was dissolved and the proceedings dismissed.    The plaintiff has appealed.

At the trial great latitude was given in the introduction of evidence.    The pleadings, however, present but a single issue.    The question is, who has the right to manage the water pipes and meter?    On the one hand the plaintiff contends

that the right is a common one belonging to the aggregate body of property owners in the subdivision, and that any one of such property owners, suing for himself and others, can complain of its infringement. On the other hand O'Bear claims that the property owners bought only the right to connect their improvements with the water pipes and to receive a supply of water at reasonable rates, and that the title or ownership of the water system itself remained in the realty company. In the deed to plaintiff the water pipes are not mentioned. In some of the other deeds executed by the realty company the right to connect with the supply pipes is expressly granted. In none of them are the pipes sold. The deed of the realty company to plaintiff conveys the two lots and "the appurtenances thereto." What are appurtenances as applied to the water system? Undoubtedly the pipe leading from the house to the supply pipe in the alley is an appurtenance to plaintiff's lots, and when the special purpose for which the water system was constructed is taken into consideration it may be safely asserted that the right to connect plaintiff's property with the system also passed by the deed as an appurtenance. I am also of the opinion that under the circumstances in evidence the plaintiff acquired the right to have his premises supplied with water at reasonable rates and that the realty company so obligated itself. But the contention of the appellant goes much further and is to the effect that by the terms of the various deeds the entire property in the water main and the supply pipes and the right to control or arrange for the supply of water vested in the aggregate body of purchasers of the subdivision. The question involved is what incorporated rights or easements belonging to the grantor and situate on land belonging to him other than that conveyed will pass by implication as an appurtenance to the land mentioned in the deed. My associates hold that any such right which is reasonably necessary to the full and free enjoyment of the estate conveyed will pass as

APPURTENANCES.

an appurtenance.   Some of the authorities cited by Judge
Bland in his opinion sustain this view, but the great weight of
authority is to the effect that the ownership of the right or
easement must be absolutely necessary or indispensable to the
enjoyment of the property sold.   This is the law in this state
as declared by Judge Sherwood in Barrett v. Bell, 82 Mo. 110.
This case has not been overruled, modified or questioned.
In the case at bar the petition fails to aver, and the evidence
does not show, and my associates do not find, that the use and
ownership of the water system is absolutely essential to the
ownership of plaintiff's property.   They only find that it is
reasonably necessary to its use.   There was evidence tending
to prove that the plaintiff relied on the system for water, but
he did not attempt to show that he could not provide water
by digging wells or cisterns at a reasonable cost.   It must be
remembered that the plaintiff's property is situated in the
country, and there was nothing to prevent him from digging
wells or ponds, as is usually done in providing for a supply
of water in country districts.   In Johnson v. Jordon, 2 Met.
(Mass.) 234, it appeared that A. owned two adjoining mes-
suages.   He constructed a drain through both.   He sold both
tracts on the same day without mentioning the drain in either
deed.   The purchaser of the upper estate entered on the other
tract for the purpose of cleaning the ditch, for which he was
sued in trespass.   In justification he claimed that the right to
the use of the drain passed to him under his deed as an ap-
purtenance to the land conveyed.   The court held that he
acquired no such right by implication, if by reasonable labor
and expense he could make a drain without going through
the other tract.   This case was cited by Judge Sherwood with
approval in Barrett v. Bell, *supra,* and hence must be regarded
as the law of this state.   Therefore in my judgment the
opinion in the case at bar is opposed to that of Barrett v.
Bell, *supra,* and for this reason I ask that the cause be certified
to the supreme court.