## Mary B. Mandeville v. Horace W. Comstock and others.

Owners in common of land upon which a mill had been situate (then burned down), the power to operate which was obtained by a dam below the premises upon a stream running through them, of which power they were also tenants in common, made partition of their rights, and the mill site was conveyed to one exclusively. *Held,* that he thereby became entitled to the water power exclusively, unless a contrary intention clearly appeared from the conveyances.

One conveying an easement in water may restrict the use thereof to such purposes as he may specify in the grant.

A bill was filed to restrain the use of an easement to purposes specified in the grant under which it was claimed. The bill set forth an agreement between the parties, by which defendants were allowed to use the easement for the machinery then in use by them, and alleged a subsequent change in the machinery. The answer (not on oath) alleged that the change was made before the agreement. Replication was filed, but no proofs taken. *Held,* that the answer in this particular was responsive to the bill, and, as the case stood, complainant could have no relief on this part of the case.

*Heard November 7th and 8th,* 1861. *Decided January 20th.*

MANDEVILLE v. COMSTOCK.

Appeal in Chancery from Lenawee Circuit.    The case is sufficiently stated in the opinion.

*Millerd & Condit,* for complainant.

*Beecher & Howell,* and *T. M. Cooley,* for defendants.

CAMPBELL J. :

Complainant filed her bill to restrain defendants from using more than a certain definite number of square inches under a given head, out of a water power on the River Raisin in the city of Adrian, and also to restrain them from using that portion except for specific purposes. The case was put at issue by replication to answers, and the bill was dismissed for want of equity. It appears that Addison J. Comstock, the original owner of the premises held by both parties, built a saw-mill upon the premises now owned by complainant, which was furnished with power by a dam, which is near defendant's land, and either touches it or approaches it quite closely. In 1836, he conveyed to Rufus and George W. Merrick the lot now claimed by defendants, "together with fifty square inches of water, to be drawn under nine feet head and fall, or an equivalent at any point above; *said water to be used by said party of the second part for the purposes only of a cabinet shop and the business connected therewith, and also furnace operations.*" The saw-mill was subsequently burned down while A. J. Comstock owned it, and was rebuilt in 1834 by complainant. Previous to 1851 all of the premises and water power, except the lot of defendants and the water privilege conveyed to Rufus and George W. Merrick, had become vested, one-half in Rufus Merrick, and one-half in Joshua Mandeville, the husband of complainant, from whom she derives title. In that year, articles of agreement were made between them for the purpose of the partition of the land and premises so held in common, and it was agreed that Merrick should take a parcel

below the dam, and which included all or most all of the structure of the dam. It does not appear by any averment at what time George W. Merrick sold out his interest in the defendant's lot and privilege, but it seems to have been assumed and we are probably correct in assuming that when these agreements were made Rufus Merrick was the sole owner of that property which is termed his " Factory " in the articles of agreement. By these, Merrick agreed to convey to Mandeville, with the land which fell to him, " one-half the mill privilege situate on said premises, excepting and reserving so much of said water power and privilege as has heretofore been deeded to George and Rufus Merrick," &c. Certain rights of way were reserved to the several parties, and Mandeville was bound, whenever he should build on and improve the water power, to bear his share of the repairs which Merrick was to make so long as he was the only one using the water. Merrick was to have the right to draw water from the pond to his " factory before mentioned, or any machinery in place thereof," by a flume as then located, and Mandeville was to be at liberty, without liability for repairs to the dam, to use the water for works he had below the dam whenever Merrick should not want to use the water in the pond for his factory or other machinery thereat. It was expressly provided that the partition agreements were not to affect any " *exclusive rights* to the water in said pond or any portion thereof," theretofore acquired by either party. In September, 1853, deeds were exchanged, and Mandeville, in quit claiming his undivided half of the parcel to Merrick, expressly reserved the interest in the water power, which was to remain as deeded to him previously. The deeds embodied most of the essential parts of the agreements.

We think it entirely clear that, under this arrangement, Mandeville was to have acquired and did acquire the whole water power except so much as belonged to Merrick's factory.

MANDEVILLE v. COMSTOCK.

It would naturally have gone with the land, unless the contrary should clearly appear. The original mill right was on that portion, and the dam had been raised, when all the property was in the same hands, to supply it. Both articles and deeds expressly provide for Mandeville rebuilding on the mill property, and using the power. And we are satisfied from a comparison of the instruments that their legal effect as well as their manifest design was to give Mandeville the whole mill privilege subject to the rights of the Merrick factory on defendants' lot. Defendants do not set up or claim any interest except in that lot as conveyed by A. J. Comstock to the Merricks, and whatever rights they possess can not exceed those of Rufus Merrick.

The complainant has, we think, a clear right to confine defendants to the use of the fifty square inches mentioned in Comstock's deed. The only question remaining is whether in the use of that quantity we should limit them to certain purposes.

It is plain that Comstock designed to confine the use of the fifty square inches to cabinet making and furnace purposes. Nor do we think he was precluded from making such a restriction in the way he selected. The grant of the easement (for it is nothing but an easement or servitude) was precisely analogous to a right of way for one class of purposes, as for example a footway. Whether the restriction was subsequently removed is a more serious question.

It is much to be regretted that no evidence was taken in this case, for without it we can not arrive with any certainty at the solution of this inquiry. If, when this partition was made, Merrick's factory had been, with Mandeville's knowledge, changed from a furnace and cabinet factory to a woolen factory or any other kind of establishment, we are inclined to think the restrictions were removed. If such a change was made subsequently, it would depend

very much on the facts whether a court of chancery should interfere by injunction, or leave the parties to their legal remedies.

As the case is now presented, the bill claims that the change in machinery was made after the partition. The answer, which is responsive to the bill in this respect and not merely in avoidance — because, if the oaths were not waived, a discovery on this point would have been required — alleges that it was made long before. The oath of the defendants being waived, the bill and answer are of equal validity on this fact, and neither outweighs the other. In the absence of evidence, this point remains open, and complainant can have no relief which depends in any way on its settlement.

While, therefore, we think complainant entitled to an injunction against the use by the defendants of more than the quantity of water granted by A. J. Comstock to Rufus Merrick and George W. Merrick, we can not, as the case stands, interfere to confine that use or determine its restrictions. The decree therefore must be made without prejudice to the rights of either party in reference to the restriction claimed by complainant, and without reference to any future proceedings at law or in equity in regard to any rights relating to it.

The decree below must be reversed, with costs, and a decree entered perpetually enjoining defendants and all claiming under them from using more of the water of the pond than the amount granted by the deed to Rufus and George W. Merrick, leaving the question of restriction in such use open to determination at law or in equity as it may come in controversy hereafter.

The other Justices concurred.