BLANCHARD and another vs. DOERING and another.

*Contract construed : grant of water.*

A deed of land with "150 square inches of water for propelling machinery," to be furnished by the grantor on the premises conveyed, in a flume or race, and to be taken by the grantee "at the side thereof," at an opening or openings between the bottom and top of the same, provided that no more water be taken at said opening or openings than would be discharged at a point as low as the surface of the river, "at said premises, by an aperture of 150 square inches,"

*held* to convey the right to use, *not* as much water as would flow into open space through an aperture of 150 square inches as low down as the surface of the river, without reference to the manner of taking it, but only as much as will naturally flow through an opening of 150 square inches *at the side of the main race or flume,* as low as the surface of the river.

APPEAL from the Circuit Court for *Jefferson* County.

In 1847, Luther A. Cole and others conveyed to one Green and one Reed, lot 1, block 30 in the village of Watertown, with sixty-four square inches of water for propelling machinery, to be furnished on said lot, "in a flume or race running from the dam across Rock river above, down to said lot, and to be taken by them [the grantees] from either side of said flume or race, at an opening or openings between the bottom and the top of the same: provided no more water be taken at said opening or openings than would be discharged at a point as low as the surface of the river at said lot, by an aperture of sixty-four square inches." The defendant *Doering* subsequently became owner of the property thus conveyed; and Hiram Blanchard succeeded to the rights of the grantors in said deed. On the 28th of June, 1862, Hiram Blanchard and wife, conveyed to *Doering* fifty additional square inches of water in terms precisely similar to those above recited. On the same day, said Hiram Blanchard and said *Doering* entered into a written agreement, by the terms of which said Blanchard leased and granted to *Doering* forever "the right and privilege of drawing the 114 square inches of water," described in said deeds, from the race or flume there named, "upon the land of said Blanchard known as the 'Hydraulic Reserve,' and within fifteen feet north from the north line of said lot 1, block 30, and the right of constructing a flume upon the land of said Blanchard within the limits above mentioned, for the purpose of drawing said water, and of repairing said flume," &c. And *Doering*, by said instrument, covenanted "to draw said water withing the limits above described, so long as said right and privilege [was] continued to him, his heirs, &c., and that the

same [should] not during said time be drawn from said main race, * * directly upon " said lot 1. In November, 1862, said Blanchard and wife conveyed to *Doering* the south fifteen feet of the " Hydraulic Reserve," above mentioned, also described as follows: " commencing at the northeast corner of [said] lot 1, block 30 * *, thence west along the north line of said lot to the bank of Rock River, thence north along the bank of said river fifteen feet, thence east parallel with the north line of said lot 1 to the west line of First street * *, thence south along the west line of First street fifteen feet to the place of beginning." By the same deed the grantors conveyed to *Doering* thirty-six square- inches of water, in addition to and to be drawn in connection with that previously granted, upon the premises conveyed by said deed, " from the flume or race " described in the previous deeds, " and to be taken by the [grantee] from the west side of said race, at an opening between the bottom and top of the same; providing no more water be taken at said opening than would be discharged at a point as low as the surface of the river at said lot, by an aperture of thirty-six square inches."

Hiram Blanchard died intestate in April, 1863. This action was brought by his sons and heirs-at-law for an injunction against *Doering* and his partner in business. The complaint, after stating the above facts, alleges that immediately after the date of the last mentioned deed, *Doering* " proceeded to change the place of drawing and using all of his said water to the said strip of land fifteen feet in width, and that said changes were completed about the month of July, 1863, and thereafter all the water drawn to propel the machinery " of *Doering's* grist mill, " was drawn and used on the said strip of land fifteen feet wide, until about November, 1863, when said grist mill was destroyed by fire; that soon thereafter *Doering* commenced the erection of a new grist mill * * on said lot 1, locating thereon the water-wheel thereof; and said new grist mill was

completed about December, 1864, ever since which time the water to propel the machinery of the same * * has been drawn, used and applied on said lot 1, by drawing the same from the said main race through a side flume of about sixty feet in length, of the same depth and height throughout as the main race, to wit: of the depth of about nine feet, and of the width of three feet and three inches, * * * which said side flume, for the first forty feet from said main race, runs westerly on said strip of land fifteen feet wide, and thence turns at nearly right angles south on to said lot 1; that the only gate through which water is drawn from said main race, is located on said lot 1 in said side flume, and as low down as the surface of the river, and that the opening of said gate in said side flume, when raised to its full height, is of the area of 930 square inches; that defendants are accustomed to raise said gate to, and to keep it at, its full height, while running their said grist mill; but that if they [should] raise the said gate only five inches from the bottom of said side flume, it would leave therein, under said gate, an opening as low down as the surface of said river, of the area of at least 150 square inches, through which the whole 150 square inches of water now owned by defendants can freely flow." The complaint further avers that in February, 1865, the defendant *Mieskee* bought of *Doering* an undivided third of said grist mill and appurtenances, and that ever since that time defendants have together been running said mill, and constantly drawing through said gate as much water as would flow through an aperture in the side of said main race, as low down as the surface of the river, of the area of 300 square inches. The complaint contains also allegations of unlawful interference by defendants in raising, on the first day of the week and on other days, the head gates regulating the admission of water from the river into the main race, so as to endanger the banks of said race, &c. Prayer, that defendants &c. be restrained from intermeddling with said

head gates, and from drawing any of said water on the first day of the week; "from drawing any more water from said main race than their said 150 inches, and from drawing the same through an opening or openings at the bottom of the side of said main race exceeding in all 150 square inches, or, if located at any higher point, that the size of such opening or openings may be such as not to discharge more water    *    * than would flow through said aperture at the bottom of said flume of the area of 150 square inches    *    *; that defendants may be required to construct and maintain in the side of said main race, a gate at the said opening, of the size of such opening, so that all the water passing into said opening shall pass through such gate, or that the same may be constructed under the order of the court," &c., &c.; and that during the pendency of the action, defendants &c. may be restrained from keeping their said gate in said side flume higher than five inches from the bottom of the flume, and from having an opening at said gate of greater area than 150 square inches, and from drawing or using any water on the first day of the week, and from intermeddling with said head gates, &c.

The court granted an injunctional order, restraining defendants from raising their gate more than five inches, and from having an opening at said gate of greater area than 150 square inches, and from intermeddling with the head gates to the main race on the first day of the week, until further order.    Defendants moved to modify this order by striking out the first two clauses.    The affidavits of A. F. Ordway and others, read in support of this motion, tended to show that the defendants used in their mill an American Turbine water-wheel; that "said wheel has twenty buckets or issues, each 7 1-8 inches high by 1 5-8 inches wide, making 231 1-2 square inches for the area of said issues combined; that said wheel discharges, when in motion and grinding in said mill, 65 per cent. of the area of its issues, and no more, making 150 15-100 square

inches of water discharge, and no more;" and that there was very little leakage.  The court held that the defendants, under the deeds aforesaid, are not limited "to an opening in the side of the race or flume of the area of 150 square inches, when the same is located as low down as the bottom thereof, or as the surface of the river;" but are entitled to "as much water as will run into open space through an aperture of the area of 150 inches as low down as the surface of said river; and that the same is to be measured in defendants' tail-race, or discharge of their mill."  The injunctional order was therefore modified in accordance with the motion; and plaintiffs appealed.

*Enos & Hall*, for appellants, cited Angell on W. C., §§ 148, 275; *Drummond v. Hinckley*, 30 Me., 433; *Dewey v. Bellows*, 9 N. H., 282; *Schuylkill Nav. Co. v. Moore*, 2 Whart., 477; *Mandeville v. Comstock*, 9 Mich., 536; *Bardwell v. Ames*, 22 Pick., 333; *Norris v. Showerman*, 2 Doug. (Mich.), 16.

*D. F. Weymouth*, *H. Mullenger*, and *H. S. Orton*, for respondents, contended that under their grants respondents were entitled to draw as much water as will run into clear space through an aperture of 150 square inches, from the race as low down as the surface of the river below their mill; and that it does not matter to plaintiffs what kind of a gate or what kind of machinery they use, or where they use it, so that they do not exceed the quantity they are entitled to.  Angell on W. C., 144; *Kennedy v. Scoville*, 12 Conn., 317.

COLE, J.  This appeal must turn entirely upon the construction which is placed upon the different conveyances.  The language in each one of the deeds is essentially the same, for estimating the quantity of water intended to be granted.  And it may be stated to be a grant of 150 "square inches of water for propelling machinery, to be furnished by the said parties of the first part" on the premises, conveyed "in a flume or

race," and to be taken by the parties of the second part, "at the side thereof," " *at an opening or openings between the bottom and top of the same; provided that no more water be taken at said opening or openings than would be discharged at a point as low as the surface of the river*" at said premises "*by an aperture of* 150 *square inches.*" The question is: What is convyeed by such language? Is it the right to use as much water as would flow *into open space* through an aperture of 150 square inches as low down as the surface of the river, without reference to the manner of taking it; or is it the right to take at said level as much water as will flow through an aperture of 150 square inches? We are of the opinion that the manifest intent of the grants is to convey the right to draw all the water which will naturally flow through an opening of 150 square inches at the side of the main race or flume as low as the surface of the river.

It was, of course, competent for the parties to prescribe the manner in which the quantity of water should be ascertained and measured ; and they seem to have done so in clear and unambigous terms. It is all the water which may be discharged through an aperture in the side of the flume of 150 square inches, at a point as low as the surface of the river. It is clear that the parties have provided that the quantity of water is to be ascertained and measured in this manner, that is, by an aperture of this size made at the prescribed point.

The circuit court held that the grants did not limit the defendants to the right of taking all the water which would flow through an opening in the side of the race of 150 square inches as low as the surface of the river, but that they might draw as much water as would run into open space through an opening of that area, the water to be measured in defendants' tail race or discharge of their mill. But we are unable to concur in this construction of the deeds. For, to our minds, it is manifest that the parties themselves have clearly expressed the particular manner the volume of water drawn should be ascer-

tained and determined ; and it was what would flow through an aperture of the size mentioned in the side of the main race or flume. And as they have prescribed the mode of measuring the quantity of water granted, none other can properly be resorted to.

It appears that the defendants have been accustomed to receive the water used at their mill from the main race through a side flume of about sixty feet in length, of the same hight and depth throughout as the main race. The water was discharged from openings or pent-stocks in the side race into and upon an American Turbine water wheel. The person who put in this wheel, Mr. A. F. Ordway, who is conceded to be an able and intelligent mill-wright, well versed in the science of hydraulics, says that the wheel was so gauged and constructed that it would discharge only about one hundred and fifty inches of water, when making seventy or eighty revolutions a minute, the velocity necessary to do good work. The defendants claim that they have the right to use the water in this manner, the quantity used being ascertained by measurement at the tail-race. But this method of measurement is clearly inadmissible.

Our construction of these grants is strongly sustained by the cases of *Drummond v. Hinkley*, 30 Maine, 433 ; *Norris v. Showerman*, 2 Doug. (Mich.), 16 ; *The Schuylkill Navigation Co. v. Moore*, 2 Whart. (Pa.), 477. See also *Dewey v. Bellows*, 9 N. H., 282 ; *Mandeville v. Comstock*, 9 Mich., 536 ; *Soc'y for Estab. Manufactures v. Holsman*, 1 Halstead Ch., 126.

That portion of the injunctional order appealed from must be reversed, and the cause remanded for further proceedings in accordance with this decision.

*By the Court.*—Order reversed.