JESSE V. PALMER and Another, Respondents, *v.* CHARLES H. ANGEL and Another, Appellants.

*Grant of water for a mill — place of measurement of the quantity of water.*

When a grant of water for the use of the grantee's mill conveys a right to take a specific quantity of water as such, measured in inches, and not a specified power, and fixes the place where the grantor is to furnish the water as, *e. g.,* that it is to be taken from the grantor's race at a certain point, the quantity of water to which the grantee is entitled is to be measured at the place so fixed for its delivery and not at the mill where it is used.

APPEAL by the defendants, Charles H. Angel and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of Washington county on the 19th day of January, 1892, upon the report of a referee.

The action was brought to determine the true amount of water which the defendants were entitled to use, under certain grants contained in deeds, and to restrain them from using a greater amount, and for damages for a wrongful use of water.

*C. C. Van Kirk,* for the appellants.

*R. A. Parmenter* and *Esek Cowen,* for the respondents.

HERRICK, J.:

Prior to the 1st day of May, 1863, the Battenkill Knitting Company was the owner of certain real estate and lands in the county of Washington, through which lands and real estate runs a stream known as the Battenkill; across such stream there was a dam and a mill pond created by said dam, the water power from which was used to operate the mill owned by the Battenkill Knitting Company.

On the 1st day of May, 1863, the Battenkill Knitting Company executed and delivered to Moses Ballou and Horatio G. Craig and their assigns a deed to a portion of the aforesaid premises owned and occupied by the said company, and also conveying to them a portion of the water power, and in said deed it was covenanted and agreed that the " parties of the second part, their heirs and assigns, are to have the right to tap the raceway of said Battenkill Knitting Company at a point near the southeast corner of said factory, and nearly opposite said elm tree, also the right to enter upon the premises of said company to build, repair or use a trunk or race and head gate by them erected, for the purpose of using the water as above conveyed; also the right to use from the raceway of said company six hundred inches of water for the purpose of carrying their mills and machinery, and the party of the first part agrees to furnish said water in their said race at all times, for the use of the party of the second part. The party of the first part, however, expressly excepts from the grant to the parties of the second part and expressly reserves to itself the first five hundred inches of water from their dam for the use of said knitting factory, that is now built, and said knitting company is forever to have the right to use said five hundred inches of water in preference to said parties of the second part. The parties of the second part are to have the right to draw an additional number of inches of water through their race

to use on their wheels up to the number of two hundred inches, by paying therefor to the party of the first part, at the rate of one dollar and fifty cents per inch. The parties of the second part are to decide how many inches, if any, they need above the six hundred inches above mentioned, on or before the 1st day of January, 1865."

Ballou and Craig, within the time prescribed, elected to purchase the additional 200 inches of water, paid the stipulated price therefor, and received a conveyance thereof from the Battenkill Knitting Company.

The plaintiffs have succeeded to all the lands and water power formerly owned and used by the Battenkill Knitting Company, except the land and use of water conveyed by said company to Ballou and Craig; the defendants by conveyance have succeeded to all the lands and use of water conveyed by the said company to Ballou and Craig. After the execution and delivery of the deed of 1863, and during that year, the grantees, therein named, erected upon the premises conveyed to them, a paper mill, and tapped the raceway of the Battenkill Knitting Company at the point indicated in the deed, and conducted the water therefrom by a ditch or opening some fifteen feet in width, to the wheels of the paper mill erected by them. The knitting mill and the paper mill were thenceforth operated by their respective owners; changes were made in each; new and additional wheels were put in each; no attempt appears ever to have been made to measure the amount of water retained by the plaintiffs or their grantors, or used by the defendants or their grantors.

A pumping wheel was put in use by the defendants' grantors for pumping water out of the defendants' flume, the water so pumped out not reaching the wheels of the paper mill at all, but being diverted therefrom and used for other purposes.

The mill of the defendants is about seventy feet distant from the point in the plaintiff's raceway where it is tapped to draw the water as provided in the deed.

The real question between the parties appears to be, where the water is to be measured. The defendants' contention is, that it is to be measured at the wheels of their mill, the plaintiffs' that it is to be measured where their raceway is tapped to deliver the same.

The question seems to me to turn upon the wording of the deed, and very little light is shed upon it by the cases that we have been referred to. In *Cromwell* v. *Selden* (3 N. Y. 253), the grant to the defendant was of " water sufficient to keep a saw mill in operation at all times when there is more than there is wanted to drive a grist mill with three run of stone, a set of carding machines, and picker and fulling mill, and other machinery for dressing cloth."

In *Wakely* v. *Davidson* (26 N. Y. 387), the grant of water power was in these words : " Also the privilege of water to turn said fulling mill when the same is not wanted for carding wool."

In *Groat* v. *Moak* (94 N. Y. 115), the conveyance was of a grist mill property, and the use of water necessary to operate the grist mill, with the reservation to the grantor of sufficient water to use and operate machinery in a cotton factory.

In *Mudge* v. *Salisbury* (110 N. Y. 413), the grant was of a certain amount of land, " together with the grist mill privilege, being first on the stream, for two run of stone, with the necessary apparatus for the same."

In all these cases it will be observed that the grant was of power; the amount of water was measured by the power that was granted.

In this case the parties have no specified power granted, but have a specified quantity of water.

While the water mentioned in the grant here was of course intended to be used for the purpose of producing power, yet the amount of power was not specified, but the amount of water was. Where there is a grant of power, the amount of water that the grantee is entitled to is measured by the power specified, while in the case of a grant of water as such, the power to be used is meas-, ured by what can be produced by the specified amount of water granted.

If we felt free by the terms of the deed, construing it most favorably to the grantees, to interpret it purely as a grant of power, then I think the defendants' contention would be correct, and the measurement should be made at the point where the power is produced or exerted, that is, at the wheels of the mill. But the grant will not bear that interpretation ; it is not water sufficient to operate a given number of wheels, or of water sufficient to operate the mill, but of 800 inches of water. The grant is " of the right to use from the

raceway;" the grantors "agree to furnish said water in their said race;" the grantees have the right to tap the grantors' race for the purpose of obtaining said water.

It would appear then that the water is to be delivered at the point where the raceway is tapped; it is to be used from the grantors' raceway; it is to be furnished in their raceway, not at the defendants' mill, or in the ditch or flume that they dug from such raceway, but in the raceway.

It seems to me then that the place where the water is to be furnished and delivered to the defendants by the terms of the grant, is the place where it should be measured. The contention that it will not give them as much power measured at that point as it would if measured at the wheels, it seems to me cannot affect the interpretation to be given to the wording of the grant. If they had contracted purely for power, then that power would have been measured where it was produced or exercised, which would also be its place of delivery. Having seen fit to contract for a measurable or specific quantity of water, that must be measured at its place of delivery, which is also the place where in this case the grantors specifically agreed to furnish it.

The referee has found from the evidence before him, that the grant of water is of square inches, and that at the existing head of water at the point of delivery it will require an opening or orifice of 1,280 square inches to permit the delivery of 800 inches, and from this conclusion I can see nothing in the evidence to cause me to differ.

The judgment should be affirmed, with costs.

MAYHAM, P. J., and PUTNAM, J., concurred.

Judgment affirmed, with costs.