Dexter Sulphite Pulp and Paper Company, Respondent,
*v.* Jefferson Power Company, Appellant.

Northern New York Trust Company and Herring College, Intervenors, Appellants.

Fourth Department, July 3, 1917.

**Waters and watercourses — suit to restrain excessive use of water from dam — res adjudicata — measurement of water for power purposes through standard rectangular aperture.**

Where, in a suit by the plaintiff to restrain the defendant from drawing water from a dam in excess of its rights, it appears that the defendant's right is based upon the privilege given to its predecessor in title " To use 9 cubic feet of water or so much as will pass through an aperture 3 feet square under all the head that can be obtained to be taken from the south end of the dam across the north channel of the Black River through a well secured and tight flume or bulkhead and used upon the premises hereby granted," the parties are concluded by a prior judgment in an action by the same plaintiff against the then owners of the rights now held by this defendant which determined that the then defendant's right was " To use as much water from said pond as will pass through an aperture three feet square under all the head that can be obtained, to be taken from the south end of the said north dam through a well secured and tight flume or bulkhead."

Since the decree in the prior action did not expressly require the defendant to thereafter take its water through an aperture at the dam, and one was not installed at any time either before or after the decree prior to the commencement of this action, the plaintiff is entitled to a decree prescribing the form, size and structure of a standard rectangular aperture at the dam instead of a rounded opening through which the defendant shall receive the water, provided with an indicator showing whether the gate is open or closed, leaving the defendant to make such use of the column of water so delivered as may be available to it.

As the defendant's right is limited to such quantity of water as will pass through an aperture of given dimensions under a varying head, the most certain and definite measurement is by means of an aperture installed at the dam.

The decision of the referee should not, under the circumstances, be disturbed because he failed to make any more specific limitation upon the plaintiff's rights as determined in the prior action.

Appeal by the defendant, Jefferson Power Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Jefferson on the 18th day of January, 1912, upon the report of a referee.

Also an appeal by the defendant, Jefferson Power Company, and by the intervenors, Northern New York Trust Company and another, from an order of the Supreme Court, made at the Jefferson Special Term and entered in the office of the clerk of the county of Jefferson on or about the 29th day of October, 1916, denying their motion for a new trial on the ground of newly-discovered evidence and on other grounds.

*Frederick M. Boyer* and *Smith & Phelps* [*Edward N. Smith* and *Floyd L. Carlisle* of counsel], for the appellants.

*Elon R. Brown* and *Henry H. Babcock*, for the respondent.

FOOTE, J.:

By the judgment appealed from it has been adjudged that the right of the defendant the Jefferson Power Company to take and use the waters of the Black river from the dam at Dexter is as follows: " To use as much water from said pond as will pass through an aperture three feet square under all the head that can be obtained, to be taken from the south end of the said north dam through a well secured and tight flume or bulkhead, the aperture to be a standard rectangular aperture, made of metal plate not more than two inches thick, having square edges which edges shall be at least twelve inches distant from all artificial and natural objects, except water, the top and bottom edges thereof being set horizontally; said aperture shall be provided with a gate by which it can be securely closed, which gate shall have an indicator showing whether it is open or closed, easily observed at the surface, at or near the point where said aperture is placed, such aperture to open into a well secured and tight flume or bulkhead."

The right so adjudicated had its origin on January 1, 1842, in a deed from the so-called Dexter Village Company to John E. Brown, the Jefferson Power Company being the present owner through mesne conveyances from Brown. By the deed the right is described as a right " To use 9 cubic feet of water or so much as will pass through an aperture 3 feet square under all the head that can be obtained to be taken from the south end of the dam across the north channel of the Black River

through a well secured and tight flume or bulkhead and used upon the premises hereby granted." By the deed this right was also stated to be " upon an equal footing with the rights this day granted " to three other persons, one to use eighteen cubic feet of water, and two others, each to use nine cubic feet of water to be taken from the same dam.

It is contended by the Jefferson Power Company on this appeal that the referee has erroneously construed the grant, and that it was intended to convey the right to the use for power purposes of a column of water three feet square under all the head that can be obtained, to be taken through a tight flume or bulkhead and not to be measured through an aperture; in other words, that it is entitled to use the full theoretical discharge through an aperture three feet square to be measured by the discharge of its water wheels.

It appeared without substantial dispute that by the discharge through such an aperture as the referee has prescribed with thin square edges only about sixty-two per cent of the theoretical discharge can be obtained because of the contraction of jet which that form of aperture produces.

The referee, however, held the parties concluded by a judgment rendered in 1898 in an action brought by this plaintiff against the then owners of all water powers upon this dam, including the St. Lawrence Paper Company which then owned the rights now held by the Jefferson Power Company. By the judgment in that case it was held that the St. Lawrence Paper Company's right was " to use as much water from said pond as will pass through an aperture three feet square, under all the head that can be obtained, to be taken from the south end of the north dam aforesaid, through a well secured and tight flume or bulkhead." It was the opinion of the referee that this was, in effect, a holding that the aperture furnished the means of ascertaining what was intended to be conveyed and what the grantee was entitled to receive, and that this judgment was final and conclusive upon that point.

I think the learned referee was correct in that conclusion. The question was directly involved upon the pleadings in that case. The complaint alleged the water right of the St. Lawrence Paper Company to be " so much as will pass through an aperture three feet square, that is three feet by

three feet," and that said company had been taking its water through greater apertures and in greater quantities. Some of the defendants allege in their answers that the St. Lawrence Paper Company's right was limited to so much water as would pass through an aperture three feet by three feet and that it had been using larger quantities to their prejudice and asked affirmative relief, that the respective rights of the defendants as between themselves be ascertained and determined and that the St. Lawrence Paper Company and certain other defendants be restrained from taking water to which they were not entitled.

The decree in that case did not, however, expressly require the St. Lawrence Paper Company to thereafter take its water through an aperture at the dam, nor was one installed at any time either before or after the decree prior to the commencement of this action.

In the present case it was the contention of the plaintiff that notwithstanding that decree the Jefferson Power Company was taking from the common dam more water than it was entitled to use under said decree. The complaint alleges that said company " claiming the right thereto is using several times as much water as will pass through an aperture three feet square under the head obtainable and is doing the same under claim of right." Also, " That it is impossible in the absence of any accurate measurement to be made by plaintiff to ascertain the amount of such excess of use by the said defendants as the water is not drawn through apertures of prescribed dimensions, but is used by the defendants at will in large quantities and in a manner that the plaintiff cannot accurately observe." The referee has found that at the time this action was begun each of the defendants was drawing water from the pond in excess of its rights and was in the attitude of claiming that it did not exceed its rights.

Under these circumstances, I think the referee was justified in prescribing and requiring the defendant to use some device for accurately measuring the quantity of water it was using, which could be inspected by plaintiff and others interested.

The question is whether the rights of the defendant Jefferson Power Company have been infringed or improperly limited by the device required by this judgment.

The contention of the defendant is that the measurement of water for power purposes through an aperture is unusual, impracticable and that it results in a loss of power and an unreasonable and unnecessary restriction upon the development and use of its water privilege.

This, I think, depends upon what its water privilege is. If it is limited, as I think the referee has rightly held, to the quantity that will pass through an aperture of given dimensions under a varying head, then apparently the most certain and definite measurement would be by means of such an aperture installed at the dam.  The grant is not capable of interpretation in terms of a constant flow of a given amount of water, or in a certain number of cubic feet per second, as might be the case if the grant fixed a definite head.  The mesne head at Dexter is thirteen feet, but this varies with the rise and fall of the river, and each change in head works a corresponding change in the quantity defendant is entitled to use.  The effect of the prescribed aperture will be to regulate the flow to defendant's wheels accordingly.  Whether the same effect can be secured by means of calibrated wheels, as is contended by defendant's experts, is not so clear.  But however that may be, I am  not prepared to say that the referee erred in requiring the use of an aperture as a means of measurement.

But it is urged that if an aperture  is to be prescribed, it should not be limited to the form prescribed.  The referee has held that the form prescribed was " practically a standard orifice and its character presumably known to hydraulic engineers " at the time of this grant in 1842; that the grant as construed in the decree of 1898 calls for a square opening, and that when used as a means of measurement of a grant of water without qualification should be construed to refer to that kind of a square orifice which is the most definite and certain in its results.

It appears that by rounding the edges of the orifice the contraction of jet is avoided and the amount of discharge increased possibly to unity or the full theoretical discharge. But the learned referee was of opinion that this form of orifice could not have been in the contemplation of the parties to the deed in 1842, it not appearing that at that time such a

form was in use for the measurement of water; he was also of opinion that to round the edges of the orifice would introduce an element of indefiniteness and uncertainty.

On the evidence which was before him and in view of the decree of 1898, I cannot say that the learned referee should have reached a different conclusion upon this question. There is no doubt upon the evidence that the form of aperture prescribed affords a means of measurement definite and certain in its results as is well understood by hydraulic engineers and manufacturers of water wheels. There was evidence which the referee evidently accepted as true to the effect that there is an established practice among hydraulic engineers that where water is allowed through apertures, it is to have rectangular openings with sharp edges.

The grant in this case was one of four grants in the nature of a dividend of the remaining water rights among the owners who composed the so-called Dexter Village Company. These men practically divided among themselves the remaining water rights, each receiving the same form of deed as descriptive of the rights conveyed. It is not a case, therefore, for construing the grants most strongly against the grantors.

It is contended that while the prescribed aperture will discharge sixty-two per cent of the theoretical capacity of the opening which under a head of thirteen feet will be about one hundred and sixty-one cubic feet per second, defendant cannot get the benefit of this quantity of water through its wheels for power purposes; that the flow will be retarded by the wheels so that in actual practice when the wheels are in operation, it will draw only about one-half this quantity of water from the pond.

This feature of the case has been strongly urged upon our attention as being a result not understood or intended by the referee and as working a manifest injustice to the defendant. The suggestion is that no such result would follow if the water was measured through calibrated wheels. If I understand the position of defendant's counsel and engineers upon this question, it is that defendant should be allowed to discharge from its wheels one hundred and sixty-one cubic feet of water per second when the head is thirteen feet, even

though its right is limited by the quantity which would pass through the prescribed aperture.

Theoretically, a column of water three feet square under a thirteen-foot head would discharge about two hundred and sixty cubic feet per second, but the actual discharge through the form of aperture prescribed with sharp edges is, because of the retardation of the flow due to the contraction of jet, only one hundred and sixty-one cubic feet per second.

Plaintiff's engineers were of opinion that by installing a penstock of somewhat larger diameter than the prescribed aperture with a wheel near the lower end of the penstock and a draught tube into and below the water of the tailrace, defendant could utilize the full power which one hundred and sixty-one cubic feet per second under a thirteen-foot head was capable of developing. This theory has been vigorously assailed upon this appeal and was the basis of defendant's motion at Special Term for a new trial upon newly-discovered evidence and because of the supposed error of this claim.

It is now asserted that when the head and fall of the water is used to drive the wheel in the penstock its flow will be checked, and that by as much as the potential energy of the head and velocity of the flow is used to produce power through the wheel, by that much will the velocity of the flow be retarded, and so there would be discharged through the wheel and drawn from the pond only about one-half of one hundred and sixty-one cubic feet per second, and only about one-half the quantity that would be discharged if there was no wheel in the penstock. This contention implies that defendant is entitled to use part of the head and fall to develop power and still have left the same amount of head to be applied to produce velocity of discharge, so that it may still discharge into the tailrace one hundred and sixty-one cubic feet per second after using a part of the available head and fall through its wheel to produce power; in other words, that it may use a part of the energy of the head and fall and still have the same amount left to create velocity of discharge.

Whether this contention is right or not depends upon the construction of the grant. It is not a grant of a given amount of power. It has been held to be a grant of so much water as would pass through a prescribed aperture under the head

available.   Assuming that the right granted was intended to be used to produce power, then it was such an amount of power as such a column of water would produce when led to and discharged through a water wheel.   Assuming defendant's claim to be correct that when such a column of water is used to produce power through a water wheel, the discharge into the tailrace is only about one-half the quantity that it would be with no water wheel to obstruct the flow, it does not follow that defendant has been deprived of the benefit of the power which such a column of water is capable of producing.   It is evident that to permit of the discharge into the tailrace of one hundred and sixty-one cubic feet per second after the column of water has passed through the water wheel and its flow has been retarded thereby, a larger aperture than three feet square at the dam would be required, and that the volume of discharge would then be affected by the manner in which the wheel was being used and the power it was developing.

It follows, I think, that since the grant was of only such quantity of water as would pass through an aperture, no injustice has been done to defendant by requiring the water to be measured through an aperture of that size, leaving defendant to make such use of such column of water so delivered as may be available to it.

The conclusions reached by the learned referee find more or less support in the following authorities:

In *Palmer* v. *Angel* (69 Hun, 471) the grant was of the right to tap the raceway of the grantor and to use from the raceway six hundred inches of water for the purpose of carrying their mills and machinery.   Defendants contended that the water should be measured at the wheels of their mill and plaintiffs that it should be measured where their raceway is tapped.   It was held that the plaintiffs' contention was the correct one and in the course of the opinion it is said: " The contention that it will not give them as much power measured at that point as it would if measured at the wheels, it seems to me cannot affect the interpretation to be given to the wording of the grant.   If they had contracted purely for power, then that power would have been measured where it was produced or exercised, which would also be its place of delivery."

Also, " Where there is a grant of power, the amount of water that the grantee is entitled to is measured by the power specified, while in the case of a grant of water as such, the power to be used is measured by what can be produced by the specified amount of water granted."

In *Canal Co.* v. *Hill* (82 U. S. [15 Wall.] 94) a grant of the right to draw from a canal so much water as will pass through an aperture of a given size and position is held to be substantially a grant of a right to take a certain quantity of water in bulk or weight. I quote the following from the opinion of the court by BRADLEY, J., as pertinent (p. 102): " In the third place, as to the freedom from obstruction with which the water shall be permitted to flow off and be discharged: the lease imposes no restrictions upon the lessee on this point, except that he shall not affix to the aperture any attachments or contrivances for increasing the flow beyond what it would otherwise be. This restriction relates to the well-known law of practical hydraulics that an adjutage or nozzle attached to the outside of an aperture prevents the vein of water from contracting and increases the aggregate discharge. With this exception, however, the lessee is entitled to draw off from the canal as much water as the two-hundred-inch aperture will discharge when it flows free from any obstruction except that which may arise from the ordinary use of the water in milling operations."

In *Cummings* v. *Blanchard* (67 N. H. 268) the grant was the right to take from a bulkhead and flume a quantity of water which was discharged therefrom through an aperture of 200 square inches at the gate under a fifteen-foot head. In construing this grant the court said: " It is for the defendant to determine how large the gate and wheel shall be, how many apertures there shall be in the wheel and their size, and all details of the structure of the wheel. The essential limitation is that the water he uses shall be discharged before he uses it through an orifice not larger than two hundred square inches under a head of fifteen feet, or its equivalent under a greater or less head. With all the water so obtained he can do what work he pleases in his own way. All the power he loses through wasteful wheels is his loss; all of it that he saves by improved wheels is his gain.  *  *  *  He

had every inducement to adopt the mechanical inventions that will obtain the greatest power from a stream discharged through an orifice of the size and under the head fixed in the deed, or its equivalent."

In *Jackson Milling Co.* v. *Chandos* (82 Wis. 437) the grant was of a right to take from a canal 2,000 inches of water under an eleven-foot head. Plaintiff contended that the words "2,000 inches of water under an eleven foot head" meant a stream of water having a cross-section area at right angles to the thread of its flow of 2,000 square inches and moving with the velocity due to a head of eleven feet. Defendant on the other hand construed these words to mean so much water as would be discharged from an ordinary flume through an opening cut in the side thereof of an area of 2,000 inches while said water is retarded by the actual operation of wheels in motion doing ordinary work as water wheels running a mill. The openings constructed to utilize this grant contained an aggregate area of 1,980 square inches. This circumstance was given weight in the construction of the meaning of the grant as showing the understanding of the parties, and in considering the claim of the defendant the court said (p. 454) : " We cannot accept the defendants' theory that the parties meant to add to this meaning an element of uncertainty, such as the retardation of the flow caused by machinery doing the ordinary work of a grist-mill. This retardation must be variable, depending upon the kind of wheels used, the perfection of machinery, and the amount of work being done. It would be a constantly changing quantity. No witness could accurately testify to the amount of such retardation. We find nothing in the evidence that shows to our minds that the parties intended to add to the grant such an element of uncertainty, and we shall not do so." (See, also, *Norris* v. *Showerman*, Walker Ch. [Mich.] 206; 2 Doug. [Mich.] 16; *Blanchard* v. *Doering*, 21 Wis. 477; *Hartwell* v. *Mutual Life Ins. Co.*, 50 Hun, 497; *Torrance* v. *Conger*, 46 N. Y. 340.)

Much evidence was given upon the trial on the question as to whether plaintiff was using more water through the canal by which it is conveyed than is permitted by grants and prescribed by the decree of 1898. Defendant, the Jefferson Power Company, had not by its answer raised that question

or demanded any affirmative relief against plaintiff, but it sought to show and was permitted to give evidence tending to show that plaintiff was exceeding its right in this respect and had deliberately enlarged its canal and was, therefore, not in a position to ask equitable relief against defendant. The evidence was received and ultimately an amendment of defendant's answer allowed to the extent of setting up that plaintiff at its sites in operation has used more water than it was entitled to use under its respective grants and has improperly transferred the same and has without right enlarged the flowing capacity of the sulphite canal and by logs in the stream has impeded the flow of the river. The referee has found as a fact that the changes in the canal have not increased the flow of the plaintiff's wheels beyond its rights. It is now contended that the referee should have defined and limited plaintiff's right through its canal. But that right was defined and limited in the decree of 1898, as follows: " That the right to the use of water from said dams by the plaintiff is to have and use so much water as will flow through its canal or raceway when the water in the pond, formed by said dams, is within six inches of the top of the dams as they now are." The decree in the present case makes substantially this same provision. Thus the capacity of the canal is the measure of plaintiff's right.

I do not think the decision of the referee should be disturbed because he failed to make any more specific limitation upon the plaintiff's right. The question of the definition of this right was fully considered by the Special Term which granted the decree of 1898. The opinion of the court shows how fully it was considered. (*Dexter Sulphite Pulp & Paper Co.* v. *Frontenac Paper Co.*, 20 Misc. Rep. 442.)

The other questions urged have been, I think, correctly disposed of by the learned referee.

The judgment and order appealed from should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.