thereat. The same criticism would apply to prosecutions arising under sections 766, 767, 768, 769, and 772 of the Penal Law, defining various crimes against the election franchise, the language of which is applicable to elections and town meetings only. From these considerations, it seems to me that every motive of public policy and every fair intendment of the meaning assigned to the word "election," wherever it is used in our statutes, require that it should be interpreted to mean, not only the selection of officers by the voters, but as well their action in passing upon all questions submitted to them for determination. As it is clear that no such registration as is required by the Constitution was required or had in advance of the submission of this question for popular vote, it follows that the act under which the question was submitted was unconstitutional, and no valid result could be, or has been, reached thereunder.

I am also of the opinion that the meaning of article 2, section 4 of the Constitution is that 10 full calendar days shall elapse between the completion of the registration and the date fixed for the holding of the election; as in this case the registration was not completed until 10 o'clock on the evening of Saturday, March 28th, while the voting was to commence at sunrise on April 7th, 10 full calendar days did not elapse, and this further constitutional requirement was not satisfied.

These two considerations impel me to dissent from the affirmance of the order appealed from, and to vote for the reversal of the order and the granting of the injunction prayed for.

---

(86 Misc. Rep. 467)

HEATON v. NEW YORK CENT. & H. R. R. CO.     (two cases).

(Supreme Court, Trial Term, St. Lawrence County.   July, 1914.)

1. EASEMENTS (§ 18*)—WAY OF NECESSITY—RESERVATION IN GRANT.
   The rule that if one conveys land, leaving other land belonging to him to which he can have access only by passing over the land granted, a way of necessity is reserved in the grant obtains though the grant is for a railroad right of way.
   [Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 50–55; Dec. Dig. § 18.*]

2. EASEMENTS (§ 18*)—WAY OF NECESSITY—SERVIENT LANDS.
   A way of necessity cannot be claimed by a grantor over other land than that granted by him.
   [Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 50–55; Dec. Dig. § 18.*]

3. EASEMENTS (§ 18*)—WAY OF NECESSITY—SEVERANCE OF OWNERSHIP.
   That H., after granting a railroad right of way through his land, leaving part of his land isolated, conveys parts of the isolated tract to others gives them no right to separate ways of necessity over the railroad land, as he could not give them rights not existing in himself and attaching to such tract as a whole at the time of the conveyance to the railroad.
   [Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 50–55; Dec. Dig. § 18.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. EASEMENTS (§ 36*)—WAYS—PRESCRIPTION—PRESUMPTION.

The presumption from visible, open, notorious, continuous, and uninterrupted use of a way for 20 years that the use was under a claim of right is not conclusive, but serves only to shift the burden of proof.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 77, 78, 88–93; Dec. Dig. § 36.*]

5. EASEMENTS (§ 8*)—PRESCRIPTION—WAY OVER RAILROAD.

To acquire a way by prescription, if it can be so acquired, against a railroad company over its right of way in a country. district, there should be most distinctive acts indicating hostile use under a claim of right for the required period, and such acts should be sufficient to notify it of the use and claim of right, or some direct and positive notice of such claim must be given it; and use such as is commonly made of railroad property in the country is not enough.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 23, 24, 27–33; Dec. Dig. § 8.*]

Two actions by Emma S. Heaton against the New York Central & Hudson River Railroad Company. Judgment for defendant.

Lawrence Russell, of Canton, for plaintiff.

Thomas Spratt, of Ogdensburg, for defendant.

BORST, J. Plaintiff brings these actions to restrain the defendant from constructing fences between her lands and those of the defendant whereby, as she alleges, her rights of way over the lands of the defendant are obstructed.

In December, 1853, Russell S. Hill then owning a parcel of land in the village of Canton, N. Y., bounded westerly by Park street and on the other three sides by the property of other parties, conveyed out of the central part of the same a rectangular parcel 80 feet in width to the Potsdam and Watertown Railroad Company for a right of way. This parcel did not extend to Park street. By conveyances and leases it has passed to the defendant. Later the railroad company by purchase from one Symonds continued its right of way to Park street from the parcel of land purchased of Hill. By his conveyance to the railroad company Hill divided his lands, leaving one parcel to the southeasterly of the railroad track isolated from his other lands and without any way from the same. This parcel of land for convenience will be referred to hereafter as the "isolated lot." In the year 1855, the Potsdam & Watertown Railroad Company commenced the construction of a single track of road over its parcels of land purchased of Hill and Symonds, and this track has been continued in the same condition with no addition to the time of the commencement of this action. This track was laid at about the central part of its right of way in a cut a few feet below the surface of its lands, with some considerable space between the track and the lands of adjoining owners. With the exception of the space occupied by this track, no use has been made of the right of way by the railroad company. In the same year that the company commenced the construction of its track, Hill erected a dwelling house on the "isolated parcel." At a later period, and about 1861, Hill erected a second house on the "isolated parcel" easterly of the one first built by him. This latter house, with a parcel of land surrounding it, was

conveyed by Hill about 1865 to plaintiff's father, J. Baldwin Livingston, and which, by descent, has come to her. Later this house was moved further westerly on the "isolated lot," and about 1880 Livingston built a new house on his lot purchased of Hill.

From about the time of the sale to the railroad company, Hill used as a means of access to and from his "isolated lot" to Park street a way on the south side of the strip of land he had conveyed to the railroad company and the parcel which the latter had purchased of Symonds. He used this as a road or way as was convenient and desired for teams and foot passengers in going to and from his house to Park street, so that it became somewhat well-defined, and continued so to the time of the commencement of these actions. Hill and those succeeding him also used from about 1855, a footpath directly across the railroad right of way and tracks opposite his house to that part of his lot on the north which had been cut off from the "isolated lot" by the sale of the parcel of land to the railroad company. Later these premises on the north owned by Hill were conveyed to other parties, but the footpath remained. This path was used by the occupants of the Hill house to get to a well immediately to the north of the railroad right of way from which they procured water, and also as a short cut to the central part of the village. A few wooden steps were set in the embankment on the south side of the railroad track opposite the Hill house and a plank or two, called in the evidence a "bridge," lay from the steps to the roadbed on which the tracks lay. The path led from the Hill house to these steps and over the plank, then across the roadbed of the railroad, and continued to the northerly side of the railroad right of way near the well and the path which led to the central part of the village.

From the time of the construction of the house on plaintiff's lot in 1865 the plaintiff and her predecessor in title maintained a fence in front of that property, with gates, opening on the railroad land, and she and those occupying the house used the railroad right of way from it to Park street, passing in front of the Hill house and over the way used by him. This way was used by foot passengers and teams in connection with plaintiff's lot in the same manner that it was used for access to the Hill property to the westerly. The plaintiff and her predecessor in title from about the same period also had a path crossing the railroad tracks and right of way directly in front of her lot, with steps and plank, which was maintained and used the same as the path in front of the Hill lot. The occupants of the three lots in which the "isolated lot" was divided used no way out from the same during all of these years except over the ways across the railroad property. In the fall of 1912, the defendant company began the construction of a wire fence along the northerly side of its right of way opposite plaintiff's premises, and by this means undertook to prevent the occupants of the premises from passing over the way across the tracks to the property and streets on the north. Plaintiff immediately began one of these actions to restrain the defendant from closing her alleged right of way across its railroad tracks. The defendant then commenced the construction of a fence along the southerly side of its right of way, closing the same to the plaintiff and preventing egress therefrom to her lot.

She then brought the second of these actions to restrain the defendant from erecting or maintaining a fence along the south side of its right of way in front of plaintiff's premises. For a considerable period of time, Hill had maintained a sidewalk on the south side of the railroad right of way in front of his house, but it had rotted away and disappeared some time prior to the commencement of these actions.

During the years from 1855 the public also used for a short cut the railroad right of way to pass from Park street to Main and Jay streets, the latter streets being northeasterly of the premises in question, using for that purpose in the main the southerly side of such right of way and from the "isolated lot" westerly the same way used by Hill and his grantees.

The extent to which the paths across the tracks were used by those occupying the "isolated lot" is not clearly shown in the evidence, nor does it clearly appear as to the extent the way was used from the "isolated lot" to Park street. The evidence, however, discloses that these ways were well-defined and showed clear and marked indications of travel upon the ground.

[1] Upon these facts we turn to a consideration of the rights of the parties. The plaintiff contends that there was a way by necessity reserved to Hill, and which has passed to her over the premises granted by him to the railroad company, and for that purpose invokes the rule of law that if A. conveys land to B., leaving other land of A. to which he can have access only by passing over the land granted, a way of necessity is reserved in the grant. It is not necessary to consider here the reason for this rule. It has been too long settled to need discussion. Wells v. Garbutt, 132 N. Y. 430, 30 N. E. 978; Dales v. Ceas, 5 Wk. Dig. 400; Wilmurt v. McGrane, 16 App. Div. 412, 45 N. Y. Supp. 32; Jones on Easements, § 306; 14 Cyc. 1176. The fact that the grantee is a railroad corporation, it has been held, does not change the rule.

"When a sale is made of a narrow strip of land through the center of a farm, the presumption that the parties do not intend to leave the grantor with no means of reaching or using the land beyond the strip sold is certainly as strong as when land is sold in other shapes which would require a way of necessity of much greater length." N. Y. & N. E. R. R. Co. v. Ry., Coms., 162 Mass. 81–84, s. c., 38 N. E. 27, 28.

[2] The authorities, however, limit the rule in its application to cases only where the burden is apparent, continuous, and strictly necessary for the enjoyment of land retained by the grantor. Outerbridge v. Phelps, 58 How. Prac. 77; Pettingill v. Porter, 8 Allen (Mass.) 1; s. c., 85 Am. Dec. 671; Jones on Easements, § 315; Buss v. Dyer, 125 Mass. 287–291; Wells v. Garbutt, supra. The fact was, and this must have been apparent to the grantee when it purchased its right of way of Hill, that the one parcel of land of which the plaintiff now owns a part was so isolated by such purchase as to leave no way to pass to and from the same except over the land granted. Sufficient necessity, perhaps, existed in favor of the "isolated lot" to entitle Hill to a way over the land granted, and if that were the sole question in these cases, it might perhaps be solved without great difficulty. The way to Park street, however, claimed by plaintiff, as we have seen, passes along the

south side of defendant's right of way, and not only over the land granted by Hill to the railroad company, but also that subsequently purchased by the company of Symonds. Plaintiff is therefore here claiming something further than that contained in the rule stated. The rule limits the way by necessity to the lands granted, and it has never been held that a way of necessity can be claimed in favor of a grantor of lands over lands not granted by him, nor over the lands of a stranger. Richards v. Attleborough Ry. Co., 153 Mass. 120, 26 N. E. 418; Tracy v. Atherton, 35 Vt. 52; s. c., 82 Am. Dec. 621; Oliver v. Hook, 47 Md. 301; 13 Am. Dec. 747, note; Jones on Easements, § 314. So far, therefore, as the claim of the plaintiff is made to a way by necessity to Park street, it is clear that she must fail.

[3] Plaintiff's right of way claimed across the tracks of the defendant's road must also fail so far as such claim is based upon a way by necessity through her grantor in title, for reasons that we will now consider. As we have seen, the way claimed by plaintiff across the railroad tracks is an entirely different way from that used in connection with the Hill house. The necessity for a way must exist at the time of the conveyance and to the whole tract granted. If this necessity did exist, Hill exercised his right to select the way, and when this was done that right was exhausted. By dividing the lot and conveying away the different parcels, he could not give to his grantee rights which did not exist in himself nor attach to his lands. When he located one way, he could not burden his grantee with further ways. This "isolated lot" was not, so far as the proof shows, situated so as to have more than one way of necessity. While the rule preserves access, it does not give two modes of access and a double right of way, except possibly under most unique circumstances which do not exist in this case. Kings County Fire Ins. Co. v. Stevens, 101 N. Y. 411, 418, 5 N. E. 353; Nichols v. Luce, 24 Pick. (Mass.) 102, 105, 35 Am. Dec. 302. A way of necessity can be presumed to have been granted or reserved only when the necessity existed at the time of the grant. Jones on Easements, § 132. The necessity for a way to plaintiff's lot could not have existed at the time of the grant to the railroad company, for it was not until over ten years later that the "isolated lot" was divided and the conveyance made of plaintiff's lot by Hill to her father. While it could be seen at the time of the conveyance by Hill to the railroad company that the "isolated lot" was cut off from a way out, and that a way would have to be provided, yet it cannot be said to have been within the contemplation of the parties that more than one way should be given if it was to pass over the land granted. Plaintiff's lot was a part of the entire Hill lot, and was bound by the action of Hill in laying his right of way. He fixed such right across the tracks, if at all, immediately following the grant, and the plaintiff's property, then being a part of the "isolated lot," had the use of such right of way. When it was conveyed to plaintiff's father ten years later, such right of way still existed for the "isolated lot," but no further way could be given against the railroad company. Plaintiff's contention, therefore, to a right of way by necessity over the railroad lands must fail, and we turn to a consideration of the other and perhaps the more difficult question raised

by plaintiff's counsel that plaintiff is entitled to these ways by prescription.

[4] Attention is called to Treadwell v. Inslee, 120 N. Y. 458, 465, 24 N. E. 651; Parker v. Foote, 19 Wend. 309; Lewis v. N. Y. & H. R. R. Co., 162 N. Y. 202, 56 N. E. 540; Ward v. Warren, 82 N. Y. 265; Hammond v. Zehner, 21 N. Y. 118; Jones on Easements, § 186, and kindred decisions holding, in effect, that the visible, open, notorious, continuous, and uninterrupted use of a way for 20 years raises a presumption that the use was under a claim of right, and that the burden is upon the party alleging that the use has been by virtue of license or permission to prove that fact by affirmative evidence. These cases undoubtedly state the law correctly under the facts in each particular case. It is sufficient to say, however, with reference to these cases that none of them represents a case where a way is claimed by prescription over the tracks of a railroad company located and in use in a country district, but they are cases where the ways claimed were over property adapted to private purposes. The presumption noted, however, is not conclusive as against other and further facts. It serves only to shift the burden to the owner of the title to show the true character of the use, and where there are other facts, tending to justify a different inference and leading fairly to a contrary conclusion, they are to be taken into account. Colburn v. Marsh, 68 Hun, 269, 22 N. Y. Supp. 990; A. B. N. Co. v. N. Y. Erie Ry. Co., 129 N. Y. 252, 29 N. E. 302.

The diligence of counsel and my own effort have not enabled us to find a reported case in this state exactly parallel with the one at bar. In Concklin v. N. Y. C. & H. R. R. Co., 149 App. Div. 739, 134 N. Y. Supp. 191, there are many suggestions by the learned judge writing the opinion which support the contention of the defendant in this case. That case, however, was one where the way was claimed by plaintiff over property appurtenant to defendant's railroad station and used generally by the public to pass to and from the same. It was there held that plaintiff could not acquire an easement by prescription in the absence of some decisive act on her part indicating a use separate and exclusive from the general use by the public.

In Keller v. Erie Ry. Co., 183 N. Y. 67, 75 N. E. 965, the court said:

"I think that it was not within the power of the defendant to permit, or to suffer, persons not in its employment to walk upon and along its tracks at a place where there was no highway and but an intersection of railroad tracks, and that no length of acquiescence in their doing so, under the circumstances of this case, could create a right of user, by license, or by sufferance. This ought to be clear from section 53 (83) of the Railroad Law * * * (Laws 1850, c. 140, § 44), which was intended to protect the traveling public as well as the railroad companies. It reads that: 'No person other than those connected with or employed upon the railroad shall walk upon or along its track or tracks, except where the same shall be laid across or along streets or highways, in which case he shall not walk upon the track unless necessary to cross the same.' It is not easy, if at all possible, to see how any right, as by license, could be acquired through acquiescence to do something which was so clearly in violation of the statutory inhibition. An act expressly prohibited by the public statute is, in its inception and always must continue to be, unlawful."

While that was a negligence case, yet the court was considering, in the expression of its views, the right of individuals to walk along and

to cross railroads and of the railroad company to grant such right, which is the question presented for consideration in this case.

In Massachusetts, on the contrary, it has been repeatedly held that a right of way across the tracks of a railroad company may be acquired by a private person by prescription and against a statute similar to that referred to, prohibiting persons walking or standing on any railroad tracks. Turner v. Fitchburg Ry. Co., 145 Mass. 433, 14 N. E. 627; Gay v. Boston & A. R. Co., 141 Mass. 407, 6 N. E. 236; Inhabitants of Deerfield v. Conn. Riv. R. R., 144 Mass. 325, 11 N. E. 105, 110; Fitchburg R. Co. v. Frost, 147 Mass. 118, 16 N. E. 773; McCreary v. Boston & M. Ry. Co., 153 Mass. 300, 26 N. E. 864, 11 L. R. A. 359.

In Sapp v. N. C. Ry. Co., 51 Md. 115, the facts showed that for a period of 25 years persons, including the plaintiffs, walked to and from their houses, which fronted on the defendant's railroad, on the company's ground alongside of the company's tracks as their footway when going to and from their houses to North avenue, and that such user had been continuous and uninterrupted during that period, and had never been interfered with by any one connected with the railroad. No other footway from the house was feasible, and the same was used as a right, and not as a favor from the company. It was held by the court that a railroad corporation had no power or right to grant an easement of footways for persons to walk along their tracks or by the side of them; that if such power existed and were exercised, it would be subversive of the very purposes for which railroad charters are granted.

[5] In the case under consideration, I do not deem it important to determine whether a private way may be acquired across the tracks of a railroad in this state by prescription, despite the statute referred to in the Keller Case. Independent of the statute and its effect, the plaintiff is not entitled to succeed in this action.

To determine in the present case whether the use made of the right of way was adverse, although concededly for the prescribed period and open and notorious so far as the plaintiff and her grantor are concerned, we must consider the parties, the nature of the use made of the railroad property, and of plaintiff's alleged rights of way, with all the facts and incidents which challenge the character of the claim to adverse use and the claim of right to the ways in the plaintiff.

It is a matter well understood that in the early days when this right of way was acquired, there was no considerable demand for a railroad in the territory through which it passed. Facilities at the beginning were provided to meet the public demand as needed from time to time. It and other agencies have developed the country through which it passes so that there is increased demand for its use and its development, and it may well be that in the near future more tracks will be needed over its right of way.

It would be unreasonable to hold that by the mere nonuser of a part of a railroad location side by side with the part in actual use rights could be acquired by a citizen's using the same even for a right of way, because they had enjoyed the permissive and not a hostile use of such part of the railroad company's lands. The construction of the track

or tracks upon a part of the location throughout its length is the best assertion of right to the entire width that could, in the nature of railroad construction, operation, and development, be demanded.

The defendant and its predecessors in title have never, so far as the proof shows, disclaimed ownership to any part of the ground originally purchased of Hill. It cannot be assumed that in order to maintain its title, it must cover its whole extent of right of way with tracks or erections or object to the use of its right of way by trespassers, otherwise it shall subject such right of way to ways by prescription. Ordinarily, as is well understood, a railroad actually occupies with its tracks only a part of the width of its right of way. It cannot be urged that because it does not use the entire distance it has lost its right to the ground adjacent to its tracks on either side by such an omission to occupy. The presence of the railroad tracks constantly in use was a defiant badge of ownership. It is the only practical assertion of title and user that can be made by a railroad company of its right of way in country districts. The fact that the right of way is not bound by railroad ties and rails over its entire space, and that such space may not within its entire distance be literally bound with an iron grasp, does not prove that a railroad company is not in the exclusive occupation of its entire right of way. There was no exclusive use of the ways on the part of the plaintiff; no use of such ways which interfered at all with the use of its entire right of way by the railroad company in the manner in which such ways are used. There was no use by the plaintiff of any ways which seems to have been brought home to any officer of the company. The fact that a few board steps were used to get down to the ditch from the embankment on the side of the track was not such a use in itself as would naturally have attracted the attention of any of defendant's officials passing over the road unless they made a particular examination. Nothing was done by the plaintiff which was in any wise hostile to the use of its right of way by the company. The roadbed proper was not covered with any planks at which it is claimed the plaintiff had a way across its tracks such as is usually provided for crossings.

The plaintiff's use of the ways so far as it was exercised was undoubtedly visible, open, and notorious, in that she and others passed openly over or along the tracks of the company from time to time. Such use would undoubtedly have arrested, and should have arrested, the attention of an individual owner of property, but it might well be questioned whether it would or should be held to attract the attention of railroad officials charged with the duties of looking after and protecting hundreds of miles of railroad. Such use might, in the ordinary case between individuals, be held to import knowledge, but in the present case I am of the opinion that it is not sufficient. Not only do the facts and the situation presented support the theory of a lack of knowledge of the use of the ways by plaintiff, but that the use was of such a character as is commonly made of railroad property in the country without any thought or question that it will ripen into a claim. If there was no such visible, open, or notorious use of the ways by plaintiff as against the defendant such as to create the presumption of knowledge, then the plaintiff, to succeed, must establish that the use and claim of

right which she makes was actually known by the railroad officials (Treadwell v. Inslee, supra; Lewis v. N. Y. & H. R. R. Co., supra) and this proof is wanting.

To acquire a way by prescription against a railway company over its right of way situate in country districts, there should be most distinctive acts indicating hostile use under a claim of right for the required period, and such acts should be sufficient to notify the company of the use and the claim of right, or some direct and positive notice of such claim made to it. The plaintiff in the case at bar has failed to establish her right to the ways in question within the principles suggested, and she, therefore, must fail in her actions.

Decrees may be presented for signature in accord with this decision.