EMMA SMITH and Others, Respondents, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Fourth Department, May 4, 1932.

*Willis D. Morgan,* for the appellant.

*Victor A. Macomber,* for the respondents.

EDGCOMB, J.   On May 24, 1838, the Syracuse and Utica Railroad Company, which by various mergers has now become a part of the New York Central Railroad Company, the defendant in this action, acquired title to a strip of land eighty feet in width, extending in an easterly and westerly direction across the farm of Amos Wetmore in the town of Whitestown, Oneida county, upon which it subsequently built its tracks and roadbed.   This strip cut the farm in such a way as to leave approximately fifty-seven acres on the north of the railroad right-of-way, and a large piece on the south.

In 1882 the New York Central and Hudson River Railroad Company, the successor of the Syracuse and Utica Railroad Company, and the predecessor of the present defendant, purchased from the then owners of the Wetmore farm two additional strips of land adjoining the eighty-foot right-of-way which had originally been purchased, the piece on the north being thirty-three feet wide, and the one on the south being twenty feet wide.

Both deeds were absolute on their face, and contained no exception or reservation whatsoever.

For many years the railroad company maintained a farm crossing at this point, but discontinued it in December, 1927, removing the planks between the tracks, and closing the opening in the right-of-way fence.

The plaintiffs, who are now the owners of various portions of the land lying to the north of the tracks, brought this action in equity, and have been awarded a judgment directing the defendant to forthwith reconstruct the farm crossing substantially as it existed in December, 1927, previous to its closing, and for damages resulting to the plaintiffs during the period it was discontinued. Defendant appeals.

In 1916 the original farm, with the exception of a small portion which had been sold to other parties, was owned by Henry R. Hall. Up to that time the property had continued to be used for ordinary farm purposes. In 1917 Mr. Hall tore down the buildings, and laid out the land lying to the south of the tracks into village lots. These lots were subsequently sold to various parties, and have been extensively built upon for residential purposes. This tract was known as the " Yorkville Addition, Reallotment of Property of Henry Hall, Yorkville, N. Y.," and a map thereof was filed in the Oneida county clerk's office.

In 1921 Mr. Hall started to develop the fifty-seven acre piece lying to the north of defendant's right-of-way. He laid out about ten acres in the southeasterly portion thereof into building lots, each of which had an approximate frontage of forty feet, and called the subdivision, " Yorkville Addition No. 2," and caused a map thereof to be filed in the Oneida county clerk's office. These lots have been sold, and at the time of the commencement of this action were owned by the various plaintiffs. A portion of the remaining forty-seven acres was plotted and laid out into lots and streets, but no map was ever filed, and no lots were ever sold. Outside of this ten-acre piece, title to the rest of the lands lying to the north of the railroad right of way was in Bertha A. Hall, a resident of California. She died soon after the commencement of this action, and both her executrix and her brother, Henry R. Hall, who was her sole heir at law and next of kin, were substituted as parties plaintiff. A dispute, in which the defendant was in no way interested, arose as to whether Miss Hall's real property passed under her will, or by the laws of intestacy. This controversy has been resolved in favor of decedent's brother, Henry R. Hall.

Plaintiffs claim the right to a continuance of this crossing by virtue of the provisions of section 52 of the Railroad Law (as amd. by Laws of 1915, chap. 281), which provides as follows: " Every railroad corporation, and any lessee or other person in

possession of its road, shall, before the lines of its road are opened for use, and so soon as it has acquired the right of way for its roadway, erect and thereafter maintain fences on the sides of its road of height and strength sufficient to prevent cattle, horses, sheep and hogs from going upon its road from the adjacent lands, with farm crossings and openings with gates therein at such farm crossings whenever and wherever reasonably necessary for the use of the owners and occupants of the adjoining lands, and shall construct where not already done, and hereafter maintain, cattle-guards at all road crossings, suitable and sufficient to prevent cattle, horses, sheep and hogs from going upon its railroad."

As I view the situation, this provision of the Railroad Law has no application here. It was enacted solely for the benefit of farm lands, and not for residential property. (*New York Central & H. R. R. R. Co.* v. *Marshall*, 120 App. Div. 742, 744; *Kerr* v. *West Shore R. R. Co.*, 18 N. Y. St. Repr. 63; affd., on opinion below, 53 Hun, 634; affd., 127 N. Y. 269; *Buffalo Stone & Cement Co.* v. *D., L. & W. R. R. Co.*, 130 id. 152; *Williams* v. *Chicago & N. W. R. Co.*, 132 Ill. App. 274; affd., 228 Ill. 593.)

As before noted, this property ceased to be operated as a farm in 1916, and, except for the occasional sale of a small amount of hay and the removal of the top soil of one lot, all the land lying to the north of the railroad right-of-way has been permitted to lie idle, and grow up to weeds, without any effort being made to cultivate the soil or to remove the natural products of the land. The deeds to several of these lots restrict the use of the property to residential purposes.

Respondents have failed to bring themselves within the provisions of the statute for another reason. Not a single plaintiff owns any land on the south of defendant's right of way. The crossing, if it should be re-established, would not be used by any plaintiff to get from one portion of his property to another. The act was never intended to give an owner of land lying on one side of a railroad track access to the lands of another on the opposite side. The right to a farm crossing cannot be invoked for the purpose of supplying the place of a public highway. (*Shea* v. *Cleveland, C., C. & St. L. R. Co.*, 158 Ill. App. 364, 369.)

The statute speaks of a farm crossing for the use of the owners of " adjoining lands." The property of but two of these plaintiffs abuts upon the railroad right-of-way. Those plaintiffs whose lots do not touch the railroad property are not adjoining owners, and are in no position to invoke the benefit of this statute, even though their lots front upon a street which has been laid out, and which runs down to the railroad right-of-way. (*Mississippi R. Com.*

v. *Illinois Cent. R. Co.*, 113 Miss. 92; *People ex rel. Banks* v. *Colgate*, 67 N. Y. 512.)

For these reasons, I think that the plaintiffs have failed to bring themselves within the letter or spirit of section 52 of the Railroad Law, and that they are not entitled to the crossing specified in this section.

The respondents urge upon this appeal, however, that they are entitled to a right-of-way over defendant's tracks by necessity, even if they have failed to bring themselves within the provisions of section 52 of the Railroad Law.

Brushing aside for the moment the objection that the complaint is not broad enough to warrant the court in giving such relief, we think that the evidence falls far short of establishing a case which would entitle the plaintiffs to a right of way by necessity over defendant's tracks. There are no findings which would justify such a judgment, and no evidence which would vindicate such a finding.

As before noted, the deeds to defendant's predecessors conveyed to the grantees the absolute fee to the railroad right-of-way, without exception or reservation of any kind.

Easements can be acquired only by grant, express or implied, or by prescription which presupposes a grant. (*White* v. *Manhattan R. Co.*, 139 N. Y. 19.)

An easement will oftentimes be implied from the circumstances, even in the absence of an express grant or reservation. Such implication will follow much more readily in favor of a grantee than in aid of a grantor, because ordinarily the latter cannot be heard to assert a right in disparagement of his covenant, a principle which is deeply imbedded in the common law. As a general rule, if a grantor intends to reserve any right over lands conveyed, he must say so in his deed. (*Wells* v. *Garbutt*, 132 N. Y. 430, 435; *Longendyke* v. *Anderson*, 101 id. 625, 630; *Outerbridge* v. *Phelps*, 13 Abb. N. C. 117, 133; *Burr* v. *Mills*, 21 Wend. 289; 1 Thomp. Real Prop. § 356.)

There is one exception to this rule, however. If a grantor conveys a portion of his property to another, leaving other land to which he has no access, except by passing over the land conveyed, an easement is reserved by implication, under much the same circumstances that warrant an implied grant of such easement, if the burden is apparent, continuous, and absolutely necessary for the enjoyment of the lands retained. (*Wells* v. *Garbutt*, 132 N. Y. 430; *Empire Bridge Co.* v. *Larkin Soap Co.*, 59 Misc. 46; affd., 132 App. Div. 943; *Wilmurt* v. *McGrane*, 16 id. 412, 418; *Heaton* v. *N. Y. C. & H. R. R. R. Co.*, 86 Misc. 467; *Birkett Mills* v. *Fenner*,

142 N. Y. Supp. 1045; affd., 163 App. Div. 935; *New York & New England R. Co.* v. *Railroad Commissioners,* 162 Mass. 81; Washburn Easements & Servitudes [4th ed.], p. 106; 1 Thomp. Real Prop. §§ 356, 359.)

Actual necessity for the easement must exist. Mere convenience will not suffice. (*Bauman* v. *Wagner,* 146 App. Div. 191; *Heyman* v. *Biggs,* 223 N. Y. 118, 125, 126; *Dales* v. *Ceas,* 5 Wkly. Dig. 400; *Root* v. *Wadhams,* 107 N. Y. 384, 394; *Ogden* v. *Jennings,* 62 id. 526, 531.)

The necessity speaks as of the date of the conveyance, and not as of some later point of time. (See cases above cited.)

It appears that the fifty-seven acres lying to the north of the railroad right-of-way are now landlocked, and cannot be reached except by passing over the lands of adjoining owners. This piece is bounded on both the east and west by private lands, on the north by the Mohawk river, on the northeast by the Sauquoit creek, and on the south by the strip conveyed to the railroad company Whether the same condition existed in 1838 and in 1882, when the right-of-way strips were deeded to the railroad company, does not appear. There is no finding on that subject, and no evidence to support a finding that the piece on the north of the tracks was isolated back in 1838 or 1882. Quite likely that was so, but we cannot indulge in presumptions. The burden rests upon the plaintiffs to show the evident necessity for this easement at the time of the conveyance of the railroad strip to the company, and not at some later date. They have failed to sustain this burden.

It is unnecessary, however, to base our decision upon such a narrow ground.

When the property in question was conveyed to the railroad company, the grantors were entitled to a farm crossing at fitting and convenient places to enable them to reach this isolated piece on the north of the tracks. By the terms of its charter the old Syracuse and Utica Railroad Company was required to permit an individual, through whose lands its road might run, the right to cross the tracks at suitable and proper places for farming and other necessary purposes. (Laws of 1836, chap. 292, § 4; Laws of 1836, chap. 242, § 7.) The original eighty-foot right-of-way was acquired under this restriction. In 1882, when the additional strips of land were procured by defendant's predecessor, the statute contained a provision for farm crossings similar to that which is found in the present Railroad Law, and this additional land was charged with such servitude.

So that when this land was conveyed to the railroad company, the owner of this farm had a right, under the statute as it then existed,

to cross defendant's tracks to reach his property on the north, and this privilege continued so long as the grantor's property was used for farm purposes. This privilege was just as effective as if it had been reserved in the deeds, and there was, therefore, no necessity or need for any other easement.

The theory of an implied easement is founded upon the evident and probable intention of the parties to the deed. (*Bauman* v. *Wagner*, 146 App. Div. 191, 195.) If, when these parcels were sold to the railroad company, it was apparent to everyone that the grantor had no way to reach his lands on the north, except by passing over the railroad strip, we might well assume that the grantor intended to reserve such right. But that purpose vanishes in the face of the provision of the statute which assured him a farm crossing as long as he continued to use his property as it was then being employed. If he deemed it necessary to subject the land conveyed to any further servitude, it was his duty to have done so in his grant to the railroad company.

A permanent right-of-way by necessity will not be accorded a grantor, in the face of his absolute grant without exception or reservation, where some other specific easement existed at the time. (*Concklin* v. *N. Y. C. & H. R. R. R. Co.*, 149 App. Div. 739, 744; appeal dismissed, 207 N. Y. 752; *Millar* v. *Millar*, 171 N. Y. Supp. 993; affd., 188 App. Div. 906.)

It, therefore, affirmatively appears that, under the well-settled rules of law, the plaintiffs are not entitled to an easement by necessity over defendant's tracks.

We have, therefore, reached the conclusion that the plaintiffs are not entitled to the relief which they seek, and that the judgment should not only be reversed but that the complaint should be dismissed.

This brings us to a discussion of the appeal of the defendant from the order of the Special Term, granting plaintiffs an additional allowance of costs, and approving the bill of costs submitted.

To warrant an extra allowance of costs under section 1513 of the Civil Practice Act it must appear that the case is both difficult and extraordinary within the usual and accepted meaning of those terms. (*Campbell* v. *Emslie*, 188 N. Y. 509; *Standard Trust Co.* v. *N. Y. C. & H. R. R. R. Co.*, 178 id. 407.) We do not think that the instant case can be said to be out of the ordinary, or that it was unusually difficult. The practice in this Department is to restrain rather than to extend the granting of extra allowances under this section.

Instead of taxing their costs before the clerk in accordance with the requirements of the Civil Practice Act, and the well-established

practice, plaintiffs moved " for an order approving the items of the bill of costs served herewith." There is no authority for such practice, and the motion for " approval " should have been denied.

For the reasons stated, the order appealed from should be reversed and the motion denied, and the complaint dismissed, with costs.

All concur; TAYLOR, J., not sitting.

Judgment and order reversed on the law and facts, with costs, motion denied, and complaint dismissed, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.