Stevens, J.
 

 This appeal involves the meaning of the term - “ farm crossing ”. The issue is whether, as a matter of law, the Appellate Division erred when, in affirming an increment allowance, it decided that the
 
 “
 
 farm crossing ” here involved can be expanded to include access for potential industrial use.
 

 Claimants are the owners of two contiguous pieces of property, each bounded on the south by a former railroad right of way 99 feet in width. Access to the properties was over the right of way of two farm crossings — one created by deed reservation, the other by statute (Railroad Law, § 52). Both were treated as if created by statute.
 

 In 1958, the railroad ceased to use the line and the tracks were removed in 1962. On December 21,1962, the State appropriated the right of way. At the time of such taking there were
 
 *453
 
 no reservations of access to adjoining property owners. As a result, the subject properties became landlocked. On December 1,1966 the State filed appropriation maps for these properties. The parties stipulated however that the compensation to be awarded should be determined as of December 21, 1962, the date of the
 
 de facto
 
 appropriation.
 

 In awarding compensation, the Court of Claims found that had the claimants, prior to State acquisition, made an offer to purchase at fair market value all or part of the right of way between their lands and the highway, a reasonable likelihood existed that the railroad would have accepted such offer. Since this was not done, the court did not value the properties as actual industrial land, but as acreage having a potential for industrial use. The court added an increment for such potential to what it determined to be the fair and reasonable market value.
 

 In affirming the judgment, the Appellate Division agreed that the record supported the view that claimants might well have obtained a private agreement with the railroad providing for better crossings. It referred to the history and use development of the term “ farm crossing ” and stated that it “ should properly be construed as including any crossing useful to the adjoining land owner.” Noting that so construing section 52 would not obligate the courts to require the railroad to construct a particular type of crossing desired by the owner, the court said,
 
 “
 
 in the instant case the record supports the conclusion that the railroad would have been compelled to provide a crossing suitable for industrial purposes if such became necessary due to the development of the properties in question ” (citing cases).
 

 The State asserts that it was the intent of the Legislature and the courts, including this court, to limit farm crossing access to either the actual use needed for the working of the farm o!r for removal of the products of the land. The State contends that the decision of the Appellate Division, finding as a matter of law that the farm crossing access in these cases can be expanded to include industrial use, is contrary to both statute and case law.
 

 The statute and its predecessors speak of farm crossings “ whenever and wherever reasonably necessary for the use of
 
 *454
 
 the owners and occupants of the adjoining lands ”. At the time the statutes were passed, the economy was largely agricultural, particularly in those areas through which the railroads would pass and which required a right of way. In its simplest terms, a farm crossing was a roadway crossing the track for the purpose of reaching land on the other side suitable for tillage or which was being tilled for agricultural purposes.
 

 The Legislature in providing for farm crossings recognized and sought to protect divergent interests. Railroads, providing transportation of goods and people were vital to the development of the economy. Thus, certain rights were conferred and obligations imposed, especially as it affected the rights of way. At the same time, adjoining land owners were entitled to use their land profitably with the right of access being assured or alternatively, a claim for damages being allowed. The crossings were to be useful and to be placed whenever and wherever reasonably necessary. “ The court may decide as to the kind and character of the crossing to be constructed, its necessity, and the place where it should be located.”
 
 (Jones
 
 v.
 
 Seligman,
 
 81 N. Y. 190, 196.) When the statute was enacted, railroads in active operation crisscrossed the country. As noted, the areas where farm crossings were required were largely agricultural. Today, many of the railroads have ceased to exist or have merged for survival with other lines and have sharply reduced operations. Unless some reasonable construction be given the term
 
 “
 
 farm crossing ”, as dictated by the circumstances peculiar to a particular case, farm land adjoining a railroad right of way, even when the road has ceased operation, would be doomed to perpetual use as farm land. The only exception would be where the adjoining land owner has had the foresight or initiative to purchase a right of way, whenever possible to do so, upon abandonment by the railroad or cessation of active use. Some of the cases have held that the provision of the Railroad Law with respect to farm crossings
 
 “
 
 was enacted solely for the benefit of farm lands ”
 
 (Smith
 
 v.
 
 New York Cent. R. R. Co.,
 
 235 App. Div. 262, 265 and cases cited). The tendency has been to put the emphasis upon the term “ farm crossing ” and to disregard almost entirely the language which follows, i.e.,
 
 “
 
 whenever and wherever reasonably necessary for the use of the owners and occupants of the adjoining lands ”.
 

 
 *455
 
 In 1891, in a case involving the removal of stone from quarries in operation prior to the construction of the railroad, this court said,
 
 “
 
 The statute does not limit the right of adjoining owners to crossings solely for agricultural purposes, but they may be ordered to enable owners to remove the natural products of the land, like stone and minerals.”
 
 (Buffalo Stone & Cement Co.
 
 v.
 
 Delaware, Lackawanna & Western R. R. Co.,
 
 130 N. Y. 152, 159.) In the same case, the court noted that the design of the statute is to compel corporations to construct and maintain crossings over lines as are necessary “ to enable owners having land abutting on either side or both sides of the road to reach and work their properties.”
 
 (Buffalo Stone & Cement Co., supra,
 
 p. 158.)
 

 The following year the statute (Railroad Law, § 52) was amended to provide that railroads, whenever crossing timber or forest lands,
 
 “
 
 shall construct and maintain suitable and sufficient crossings, whenever and wherever reasonably necessary to enable the respective owners of said lands to transport logs, timber and lumber for manufacture or sale ”, etc. Thus, we see a progression from removal of purely agricultural products to the removal via these crossings of stone quarry products and also of timber on the land, although it is true that in both instances the products removed represented the natural products of the land. It is probably unfortunate that the restrictive term “ natural products ” was used in the
 
 Buffalo Stone & Cement Co.
 
 case
 
 (supra),
 
 for such language has been cited as imposing a limitation rather than as being language purely descriptive with reference to the claim then being asserted.
 

 Most recently the Appellate Division, which decided
 
 Smith
 
 v.
 
 New York Cent. R. R. Co.
 
 (235 App. Div. 262,
 
 supra),
 
 in 1932, seems to have moved away from the position expressed in that case. In
 
 Syracuse Ready-Mix Concrete Co.
 
 v.
 
 State of New York
 
 (43 A D 2d 800), the court held that the term farm crossing should properly be construed as including any crossing useful to the adjoining owner, citing the case before us. It is not necessary for the purposes of this case to go that far.
 

 Where a railroad has long since ceased operating and the right of way is no longer used, or has been appropriated by the State, the potential use of the land should be considered in determining value only if a reasonable probability of ade
 
 *456
 
 quote access is established by competent proof. In this case the Court of Claims found that there was a reasonable likelihood that claimants could obtain an unrestricted right of access to their properties by private agreement with the railroad. Having so found, the court rightly considered the potential and properly added an increment for such potential. The Appellate Division agreed and so affirmed.
 

 The orders of the Appellate Division should be affirmed, with costs to claimants. Claimants offered proof and the court found that a reasonable probability existed that claimants might have purchased and the railroad would have sold a crossing adequate for industrial development.
 

 Chief Judge Breitel and Judges Jasen, Gabbielli, Jones, Wachtler and Babin concur.
 

 Orders affirmed.